Stuart M. Richter (CA 126231)
stuart.richter@kattenlaw.com
Gregory S. Korman (CA 216931)
greg.korman@kattenlaw.com
Andrew J. Demko (CA 247320)
andrew.demko@kattenlaw.com
Charlotte S. Wasserstein (CA 279442)
charlotte.wasserstein@kattenlaw.com
**KATTEN MUCHIN ROSENMAN LLP**
2029 Century Park East
Los Angeles, CA 90067-3012
Telephone:    310.788.4400
Facsimile:    310.788.4471

Attorneys for Defendants BBVA Compass
Bancshares, Inc., Simple Finance Technology
Corp., BBVA Compass Financial
Corporation, and Compass Bank

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMITABHO CHATTOPADHYAY, UNITE THE PEOPLE, individually and on behalf of all other similarly situated,<br><br><br>Plaintiffs,<br><br>v.<br><br>BBVA COMPASS BANCSHARES, INC., SIMPLE FINANCE TECHNOLOGY CORP., BBVA COMPASS FINANCIAL CORPORATION, and COMPASS BANK,<br><br>Defendants. | Case No. 3:19-cv-01541-JST<br><br>The Honorable Jon S. Tigar<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Complaint Filed: March 25, 2019<br><br>Date:          August 1, 2019<br>Time:          2:00 p.m.<br>Place:          Courtroom 9 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 1, 2019, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the above-named court, located at 450 Golden Gate Avenue, Courtroom 9 – 19th Floor, San Francisco, California, 94102, the Honorable Jon S. Tigar presiding, defendants BBVA Compass Bancshares, Inc., Simple Finance Technology Corp., BBVA Compass Financial Corporation, and Compass Bank ("Defendants"), will and hereby do move pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Complaint.

Defendants bring this Motion on the grounds that (1) plaintiffs Unite the People and Amitabho Chattopadhyay's (collectively, "Plaintiffs'") claim arising under 42 U.S.C. § 1981 fails as a matter of law because the alleged conduct was non-discriminatory and the claim is superseded by compliance with the more specific regulatory scheme in the Bank Secrecy Act, 31 U.S.C. §§ 5311 *et seq.*; (2) Plaintiffs' Unruh Act claim fails as a matter of law because the challenged conduct furthers a compelling social policy—compliance with the federal obligations under the Bank Secrecy Act—and is not arbitrary; (3) plaintiff Unite the People's claims fail as a matter of law because Unite the People does not allege it suffered any discrimination; and (4) Plaintiffs' claims against BBVA Compass Bancshares, Inc. and BBVA Compass Financial Corporation fail because the Complaint pleads no factual allegations against either entity.

This Notice of Motion and Motion are based on the Memorandum of Points and Authorities, the Complaint, the Declaration of Gregory S. Korman, any argument of counsel the Court may entertain at the hearing on this motion, and all matters of which the Court may take judicial notice.

Dated: May 24, 2019

**KATTEN MUCHIN ROSENMAN LLP**

By:     /s/ Gregory S. Korman

Attorneys for Defendants BBVA Compass Bancshares, Inc., Simple Finance Technology Corp., BBVA Compass Financial Corporation, and Compass Bank

# TABLE OF CONTENTS

I.      ISSUES TO BE DECIDED .............................................................................................1

II.     INTRODUCTION ........................................................................................................1

III.    RELEVANT BACKGROUND .....................................................................................4

        A.      The Bank Secrecy Act ......................................................................................4

        B.      Plaintiffs' Allegations.......................................................................................7

IV.     LEGAL STANDARD...................................................................................................8

V.      THE COMPLAINT FAILS TO STATE ANY VALID CLAIM.....................................8

        A.      Plaintiffs' Section 1981 Claim Fails as a Matter of Law Because
                Defendants Did Not Discriminate, They Complied with the
                Requirements of a More Specific Statute, the Bank Secrecy Act........................8

        B.      Because Defendants Were Complying With the Bank Secrecy Act, They
                Did Not Plausibly Discriminate on the Basis of Citizenship...............................133

        C.      Plaintiffs' Unruh Act Claim Fails as a Matter of Law Because the
                Challenged Policies Are Serve Public Policy and Non-Arbitrary .....................16

        D.      Unite the People Fails to State a Claim Because It Did Not Suffer Any
                Alleged Discrimination...................................................................................18

        E.      The Claims against BBVA Compass Bancshares and BBVA Compass
                Financial Corporation Are Unsupported by Any Factual Allegations and
                Should Be Dismissed .....................................................................................19

VI.     CONCLUSION ..........................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al-Qudhai'een v. Am. Airlines*,
  267 F. Supp. 2d 841 (S.D. Ohio 2003) ...................................................................14

*Al-Watan v. Am. Airlines, Inc.*,
  658 F. Supp. 2d 816 (E.D. Mich. 2009)..................................................................14

*Arnold v. Ballard*,
  448 F. Supp. 1025 (N.D. Ohio 1978).......................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................8, 13, 15, 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................8, 15

*Brennan v. Concord EFS, Inc.*,
  369 F. Supp. 2d 1127 (N.D. Cal. 2005) .................................................................20

*Brown v. GSA*,
  425 U.S. 820 (1976)...................................................................................................8

*Cal. Trout, Inc. v. F.E.R.C.*,
  313 F.3d 1131 (9th Cir. 2002) ................................................................................10

*Cerqueira v. Am. Airlines, Inc.*,
  520 F.3d 1 (1st Cir. 2008) .......................................................................................14

*City of Miami v. JPMorgan Chase & Co.*,
  171 F. Supp. 3d 1309 (S.D. Fla. 2016) ..................................................................20

*Cohn v. Corinthian Colls., Inc.*,
  169 Cal. App. 4th 523 (2008) ..................................................................................17

*Dasrath v. Continental Airlines, Inc.*,
  467 F. Supp. 3d 431 (D.N.J. 2006) ........................................................................14

*Flores v. EMC Mortg. Co.*,
  997 F. Supp. 2d 1088 (E.D. Cal. 2014)..................................................................20

*Gaines v. N.Y.C. Transit Auth.*,
  353 F. App'x 509 (2d Cir. 2009) .............................................................................11

*Gauvin v. Trombatore*,
  682 F. Supp. 1067 (N.D. Cal. 1988) ......................................................................20

*Gratz v. Bollinger*,
    539 U.S. 244 (2003) ................................................................................................... 9

*In re ATM Fee Antitrust Litig.*,
    768 F. Supp. 2d 984 (N.D. Cal. 2009) ...................................................................... 19

*Innerlite, Inc. v. Zirc Dental Prod., Inc.*,
    No. CV137501DOCRNBX, 2014 WL 12601024 (C.D. Cal. Sept. 2, 2014) ........................ 20

*Javorsky v. W. Athletic Clubs, Inc.*,
    242 Cal. App. 4th 1386 (2015) .................................................................................. 18

*Koire v. Metro Car Wash*,
    40 Cal. 3d 24 (1985) ................................................................................ 16, 17, 18

*Lazar v. Hertz Corp.*,
    69 Cal. App. 4th 1494 (1999) .............................................................................. 17, 18

*McDonald v. Santa Fe Trail Transp. Co.*,
    427 U.S. 273 (1976) .................................................................................................... 9

*Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    7 F.3d 1085 (2d Cir. 1993) ........................................................................................ 18

*Midpeninsula Citizens for Fair Hous. v. Westwood Inv'rs*,
    221 Cal. App. 3d 1377 (1990), reh'g denied and opinion modified (July 31,
    1990) ......................................................................................................................... 19

*Morris v. Dillard Dep't Stores, Inc.*,
    277 F.3d 743 (5th Cir. 2001) .................................................................................... 18

*Morton v. Mancari*,
    417 U.S. 535 (1974) .................................................................................................. 10

*Nat'l Ass'n of African Am.-Owned Media v. Charter Commc'ns, Inc.*,
    915 F.3d 617 (9th Cir. 2019) .................................................................................... 19

*Pallamary v. Elite Show Servs., Inc.*,
    No. 17CV2010-WQH-BGS, 2018 WL 3064933 (S.D. Cal. June 19, 2018) .................. 19

*Perez v. Wells Fargo & Co.*,
    No. 17-CV-00454-MMC, 2017 WL 3314797 (N.D. Cal. Aug. 3, 2017) ................ 10, 11

*Pizarro v. Lamb's Players Theatre*,
    135 Cal. App. 4th 1171 (2006) .............................................................................. 16, 17

*Preiser v. Rodriguez*,
    411 U.S. 475 (1973) .................................................................................................... 8

*Pryor v. Nat'l Collegiate Athletic Ass'n*,
    288 F.3d 548 (3d Cir. 2002) ................................................................................. 13, 18

iii

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
    566 U.S. 639 (2012)........................................................................................................8

*Radzanower v. Touche Ross & Co.,*
    426 U.S. 148 (1976)......................................................................................................10

*Regents of the Univ. of Cal. v. Aisen,*
    No. 15-cv-1766-BEN, 2016 WL 4096078 (S.D. Cal. Apr. 22, 2016) .......................20

*Sargoy v. Resolution Tr. Corp.,*
    8 Cal. App. 4th 1039 (1992) ...................................................................................16, 17

*Starkman v. Mann Theatres Corp.,*
    227 Cal. App. 3d 1491 (1991) .....................................................................................17

*to the bank. Chang v. Redding Bank of Commerce,*
    29 Cal. App. 4th 673 (1994) ........................................................................................13

*United States v. 103 Elec. Gambling Devices,*
    223 F.3d 1091 (9th Cir. 2000) .......................................................................................8

**Statutes**

31 U.S.C. §§ 5311 *et seq.*...................................................................................................*passim*

31 U.S.C. § 5318(i)(1),(3)...........................................................................................................4

31 U.S.C. § 5318(l)(2)(C)...........................................................................................................4

31 U.S.C. § 5320........................................................................................................................6

31 U.S.C. § 5321........................................................................................................................6

31 U.S.C. § 5322........................................................................................................................6

31 U.S.C. § 5323........................................................................................................................6

42 U.S.C. § 1981.............................................................................................................*passim*

42 U.S.C. § 3604......................................................................................................................11

49 U.S.C. § 44902(b)...............................................................................................................14

Cal. Civ. Code §§ 51 *et seq.*..............................................................................................*passim*

**Rules**

Fed. R. Civ. Proc. 8...............................................................................................................1, 20

Fed. R. Civ. Proc. 12(b)(1) ......................................................................................................19

Fed. R. Civ. Proc. 12(b)(6) ......................................................................................................19

DEFENDANTS' MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

**Regulations**

31 C.F.R. § 1010.100 ................................................................................................................5

31 C.F.R. § 1020.220(a)(1) .......................................................................................................4

31 C.F.R. § 1020.220(a)(2) .......................................................................................................5

31 C.F.R. § 1020.220(a)(2)(i) ....................................................................................................5

31 C.F.R. § 1020.220(a)(2)(i)(A)(4) ..........................................................................................9

31 C.F.R. § 1020.220(a)(2)(ii) ...................................................................................................5

31 C.F.R. § 1020.220(a)(2)(ii)(B)(2) .........................................................................................5

31 C.F.R. § 1020.220(a)(2)(iii)(A) .............................................................................................6

**Other Authorities**

Scott Sultzer, Money Laundering: The Scope of the Problem and Attempts to
    Combat It, 63 Tenn. L. Rev. 143, 184 (1995) ....................................................................4

Bank Secrecy Act/Anti-Money Laundering Examination Manual, Fed. Fin.
    Institutions Examination Council at 54 n.51 (2014),
    https://www.ffiec.gov/bsa_aml_infobase/documents/BSA_AML_Man_2014_v
    2.pdf ...........................................................................................................................2, 6

Bruce Zagaris, The Merging of the Anti-Money Laundering and Counter-
    Terrorism Financial Enforcement Regimes After September 11, 2001, 22
    Berkeley J. Int'l L. 123, 156 (2004) ...................................................................................4

Enforcement Actions, Fin. Crimes Enforcement Network,
    https://www.fincen.gov/news-room/enforcement-actions (last visited May 23,
    2019) ...................................................................................................................................6

Learning Banks – How Banks Work, Fed. Deposit Ins. Corp.,
    https://www.fdic.gov/about/learn/learning/banks.html (last updated Jan. 30,
    2018) .................................................................................................................................12

What We Do, Fin. Crimes Enforcement Unit, https://www.fincen.gov/what-we-do
    (last visited May 23, 2019) ................................................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   ISSUES TO BE DECIDED**

This motion presents the following issues for decision:

1. Whether plaintiffs Unite the People and Amitabho Chattopadhyay's ("Plaintiffs'") claim under 42 U.S.C. § 1981 ("Section 1981") fails as a matter of law under Rule 8 because the conduct alleged was not discrimination under Section 1981 but compliance with federally mandated obligations to verify the identity of potential customers under the Bank Secrecy Act, 31 U.S.C. §§ 5311 *et seq.*;

2. Whether Plaintiffs' claim under the Unruh Civil Rights Act, Cal. Civ. Code §§ 51 *et seq.* (the "Unruh Act"), fails as a matter of law because compliance with federally mandated obligations to verify the identity of potential customers under the Bank Secrecy Act is a compelling social policy and is not arbitrary;

3. Whether plaintiff Unite the People's claims fail as a matter of law because Unite the People does not allege it suffered any discrimination; and

4. Whether Plaintiffs' claims against BBVA Compass Bancshares, Inc. and BBVA Compass Financial Corporation (collectively, the "BBVA Defendants") fail as a matter of law because the Complaint pleads no factual allegations against either entity.

**II.   INTRODUCTION**

In the wake of the 9/11 terror attacks, Congress enacted the USA PATRIOT Act, which amended the Bank Secrecy Act to add provisions aimed at the detection, deterrence, and disruption of terrorist financing networks. Banks and other financial institutions have become the front-line defense against money laundering and terrorist financing. New or amended anti-money laundering and Customer Identification Program ("CIP") regulations have been imposed. These regulations require financial institutions to verify the identity of those who would open accounts based on the institution's own assessment of risk under the

circumstances. Failure to meet their Bank Secrecy Act obligations subjects financial institutions to civil and even criminal penalties from federal authorities.

Traditionally, financial institutions verified the identity of new account applicants in-person, at the branch. Those face-to-face interactions allowed bank personnel to gauge applicant credibility and review original identification documents. Defendant Simple Finance Technology Corp. ("Simple"), however, has no branches; it is an online-only digital account platform. All of its accounts are non-face-to-face accounts, which are higher-risk for CIP purposes because customer identities are harder to verify.[1]

Citizenship, along with address, date of birth, social security number, and a host of other data points, is a factor to be considered in the process of forming a reasonable belief that a financial institution knows the true identity of the customer. The purpose of the inquiry is not to prevent non-citizens from entering into contracts, but to prevent *anyone* whose identity cannot be sufficiently verified from opening a deposit account in Simple's exclusively online, non-face-to-face environment.

Plaintiff Amitabho Chattopadhyay is a non-citizen who alleges her online application for a deposit account was declined pursuant to a "pretextual" CIP policy. Ignoring the specific, federally mandated role financial institutions must play in detecting, deterring, and disrupting terrorist financing, Plaintiffs claim that Simple's decision not to open non-face-to-face, online-only deposit accounts for non-citizens constitutes actionable discrimination under Section 1981 and the Unruh Act. Plaintiffs' claims should be dismissed for the following four reasons.

*First*, Plaintiffs cannot and do not dispute that Simple and Compass have Bank Secrecy Act obligations and have implemented a CIP. They just allege that Simple did not approve her application for some reason other than its inability to verify her identity. That is what Plaintiffs mean by calling the CIP "pretextual." But critically, Plaintiffs never say what

---

[1]   Request for Judicial Notice ("RJN"), Ex. 1 (*Bank Secrecy Act/Anti-Money Laundering Examination Manual*, Fed. Fin. Institutions Examination Council at 54 n.51 (2014), https://www.ffiec.gov/bsa_aml_infobase/documents/BSA_AML_Man_2014_v2.pdf ("Higher-risk accounts, for CIP purposes, may include accounts in which identification verification is typically more difficult (e.g. . . . out of area and non-face-to-face accounts)").)

the CIP is pretext for, or what possible incentive Simple or Compass Bank could have to turn down interested depositors—which are the lifeblood of Simple's business—*other than* to comply with their Bank Secrecy Act obligations.

They never say it because there *is* no reason other than Bank Secrecy Act compliance. Any Defendant's compliance with the intricate, industry-specific regulatory regime under the Bank Secrecy Act—which mandates that financial institutions adopt and implement identity verification procedures to address the critical goals of preventing terrorism and financial crime, and which literally and explicitly distinguishes between citizens and non-citizens—cannot be deemed discrimination under the broad mandate of Section 1981. Put differently, when a specific statutory regime like the Bank Secrecy Act overlaps with a general, non-specific one, the specific regime controls. This principle is fatal to Plaintiffs' Section 1981 claim, as the same conduct that constitutes compliance with the Bank Secrecy Act's specific CIP requirements cannot be actionable as a violation of Section 1981's general prohibition of discrimination.

*Second*, Plaintiffs' Unruh Act claim fails because compliance with federally mandated obligations to verify the identity of potential customers under the Bank Secrecy Act—for the purposes of preventing terrorism and serious financial crimes—is a compelling social policy and is not arbitrary. Compliance with federal anti-money laundering regulations is not actionable under state law.

*Third*, Unite the People has no viable claim at all because it does not allege Defendants discriminated against it; it does not allege it attempted to open a deposit account or that its application was declined on the basis of alienage.

*Finally*, Plaintiffs have failed to allege sufficient facts to state a claim against the BBVA Defendants. These entities engage in no deposit activities whatsoever, and conclusory allegations lumping all Defendants together does not suffice to state a plausible claim against the BBVA Defendants.

For these reasons, and set forth below, the Complaint should be dismissed with prejudice, and judgment entered in favor of Defendants.

## III.     RELEVANT BACKGROUND

### A.     The Bank Secrecy Act

As amended by the USA PATRIOT Act after the 9/11 terrorist attacks, the Bank Secrecy Act enlists banks and other financial institutions as key players in the government's effort to deter and disrupt terrorist financing networks.[2] 31 U.S.C. §§ 5311, 5318(l)(2)(C); *see also* Bruce Zagaris, *The Merging of the Anti-Money Laundering and Counter-Terrorism Financial Enforcement Regimes After September 11, 2001*, 22 Berkeley J. Int'l L. 123, 156 (2004) (affirming that "[f]inancial institutions and their employees, and ever more associated professionals, are on the front line of international efforts to stamp out money laundering, organized crime, and terrorism")[3]

To this end, the Bank Secrecy Act requires financial institutions to develop and implement an anti-money laundering or "AML" compliance program, including a Customer Identification Program, or "CIP," to detect and prevent money laundering. 31 U.S.C. § 5318(i)(1),(3). The Secretary of the Treasury has enacted implementing regulations specifically with regard to the identification and verification of accountholders. Institutions "must implement a written [CIP] appropriate for its size and type of business," 31 C.F.R. § 1020.220(a)(1), with identity verification procedures that meet the following minimum criteria:

> The CIP must include risk-based procedures for verifying the identity of each customer to the extent reasonable and practicable. The procedures must enable the bank to form a reasonable belief that it knows the true identity of each customer. *These procedures must be based on the bank's assessment of the relevant risks, including those presented by the various types of accounts maintained by the bank, the various methods of opening accounts provided by the bank, the various types of identifying information available, and the bank's size, location, and customer base*. At a minimum, these procedures must contain the elements described in this paragraph (a)(2).

---

[2]     *See also* RJN, Ex. 2 (*What We Do*, Fin. Crimes Enforcement Unit, https://www.fincen.gov/what-we-do (last visited May 23, 2019) ("The BSA is the nation's first and most comprehensive Federal anti-money laundering and counter-terrorism financing (AML/CFT) statute. . .").)

[3]     *See also* Scott Sultzer, *Money Laundering: The Scope of the Problem and Attempts to Combat It*, 63 Tenn. L. Rev. 143, 184 (1995) ("Banks have, in effect, become the government's "front-line defense" in the fight against money laundering.").

1    *Id*. § 1020.220(a)(2) (emphasis added).

2         The implementing regulations specify the *minimum* identity verification information

3    that institutions must obtain. The regulations expressly distinguish between citizens and non-

4    citizens for identity verification purposes.[4] For everyone, institutions must collect name,

5    address, date of birth and identification number. For citizens the taxpayer identification

6    number is required; for non-citizens "one or more of the following: A taxpayer identification

7    number; passport number and country of issuance; alien identification card number; or

8    number and country of issuance of any other government-issued document evidencing

9    nationality or residence and bearing a photograph or similar safeguard." *Id*. §

10   1020.220(a)(2)(i).

11        The financial institution's CIP must contain procedures setting forth the documentary

12   and non-documentary methods the institution will rely on to verify an applicant's identity,

13   such as "an unexpired government-issued identification evidencing *nationality* or residence

14   and bearing a photograph or similar safeguard," such as a driver's license or passport. *Id*.

15   § 1020.220(a)(2)(ii) (emphasis added).

16        Documentary methods contemplate *face-to-face* account opening, because non-

17   documentary procedures must address situations where:

18        [a]n individual is unable to present an unexpired government-issued
          identification document that bears a photograph or similar safeguard; *the bank*
19        *is not familiar with the documents presented; the account is opened without*
          *obtaining documents; the customer opens the account without appearing in*
20        *person at the bank; and where the bank is otherwise presented with*
          *circumstances that increase the risk that the bank will be unable to verify the*
21        *true identity of a customer through documents.*

22

23   *Id.* § 1020.220(a)(2)(ii)(B)(2) (emphasis added).

24        "Accounts that are opened without face-to-face contact may be a higher risk for

25   money laundering and terrorist financing" because, among other reasons, it is "[m]ore

26   difficult to positively verify the individual's identity," the customer "may be out of the bank's

27

28   _____

     [4]    The regulation refers to U.S. persons and non-U.S. persons. A U.S. person is a United
     States citizen. 31 C.F.R. § 1010.100.

DEFENDANTS' MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

targeted geographic area or country," and the account "[m]ay be used by a 'front' company or unknown third party."[5] Different countries issue different identification documents, and a non-citizen is thus more likely to present documents with which the financial institution is "not familiar"—making it more risky to permit them to open accounts (as the regulations appreciate). A financial institution must be able to say confidently that its CIP procedures are sufficient to reliably identify potential depositors and to screen out legitimate risks. If the financial institution cannot confidently say that because, as here, there can be no in-person meeting, only electronic versions of documents can be presented, and foreign documentation may be unfamiliar to the institution, then its CIP must address that scenario too, including the circumstances "[w]hen the bank should not open an account[.]" *Id.* § 1020.220(a)(2)(iii)(A).

Financial institutions' evaluation of the risks is informed directly by the fact that an institution with anemic CIP/AML procedures is subject to significant civil penalties, criminal punishment of up to five years of imprisonment, and injunctions by the Secretary of the Treasury.[6] 31 U.S.C. §§ 5320–22. The Financial Crimes Enforcement Network ("FinCEN"), a division of Treasury, can and actively does bring enforcement actions for Bank Secrecy Act violations.[7] To take just two recent examples, FinCEN assessed civil penalties arising out of allegedly inadequate AML procedures in the amount of $185 million on U.S. Bank in 2018 (Case No. 2018-01) and in the amount of $9 million on Merchant Bank of California in 2017 (Case No. 2017-02).[8]

This lawsuit arises directly and exclusively out of policies Simple implemented to ensure its compliance with its customer identification obligations.

---

[5]    *Bank Secrecy Act/Anti-Money Laundering Examination Manual*, *supra* note 1, at 202.

[6]    There is no private right of action under the Bank Secrecy Act.

[7]    RJN, Ex. 3 (*Enforcement Actions*, Fin. Crimes Enforcement Network, https://www.fincen.gov/news-room/enforcement-actions (last visited May 23, 2019).)

[8]    The full FinCEN decisions may be found at https://www.fincen.gov/news-room/enforcement-actions.

### B.     Plaintiffs' Allegations

Plaintiff Amitabho Chattopadhyay is a citizen of the Republic of Singapore and a permanent resident alien. Complaint ("Compl.") ¶ 3. Plaintiff Unite the People is a non-profit organization. *Id.* at ¶¶ 3–4.

Plaintiffs allege Simple, at the direction of Compass, refuses to allow non-citizens to open a checking account on the basis of citizenship and/or immigration status. *Id.* at ¶ 2. Plaintiffs allege Simple previously allowed non-citizens to open accounts, but that changed when Compass acquired Simple, after which Simple and Compass "closed all accounts belonging to non-citizens[.]" *Id.* at ¶ 16. Alternatively, Plaintiffs allege that Simple and Compass discriminated against aliens in that Simple provided a web interface that automatically rejects non-citizen applicants based on their immigration status. *Id.* at ¶ 17.

Plaintiffs allege that Defendants publicly stated in 2018 that regulations promulgated by the Department of Treasury (*i.e.*, the regulations implementing the Bank Secrecy Act, discussed above) prohibited Simple from permitting legal permanent residents to open online-only accounts, but Plaintiffs allege that explanation was "pretextual." *Id.* at ¶¶ 18–19. Plaintiffs do not say what the explanation was pretext *for*, or articulate any reason—much less a plausible one—why Simple would turn down prospective customers, other than to comply with federally imposed obligations.

Plaintiffs allege Defendants intentionally discriminated against Chattopadhyay and the purported class members by interfering with their right to make and enforce contracts to obtain and maintain a deposit account on the basis of alienage. *Id.* at ¶¶ 37–39, 49–51. Plaintiff Unite the People is Chattopadhyay's counsel. There are no allegations that Unite the People applied for an account with any defendant or that it was discriminated against based on citizenship or immigration status. Unite the People does not invoke associational standing, but sues individually, on its own behalf, claiming it was harmed by Defendants' alleged discrimination. *Id.* at ¶¶ 33–44.

Plaintiffs also sued the BBVA Defendants. There are no allegations that either engages in any deposit activities, let alone offers consumer deposit accounts. The Complaint merely

alleges conclusorily these defendants acted in tandem with, conspired with, or were the alter egos of Simple and/or Compass. *Id.* at ¶¶ 16–17.

## IV.    LEGAL STANDARD

A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual content must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere "'labels and conclusions'" or "'naked assertions' devoid of 'further factual enhancement'" do not suffice. *Id*. (quoting *Twombly*, 550 U.S. at 555, 557) (internal brackets omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

## V.    THE COMPLAINT FAILS TO STATE ANY VALID CLAIM

### A.    Plaintiffs' Section 1981 Claim Fails as a Matter of Law Because Defendants Did Not Discriminate, They Complied with the Requirements of a More Specific Statute, the Bank Secrecy Act

If two federal statutes regulate the same conduct, it is axiomatic that the more specific one governs. *Preiser v. Rodriguez*, 411 U.S. 475, 488–90 (1973) (holding Section 1983 must yield to more specific statutory provision); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one."); *Brown v. GSA*, 425 U.S. 820, 834 (1976) ("In a variety of contexts the Court has held that a precisely drawn, detailed statute pre-empts more general remedies."); *United States v. 103 Elec. Gambling Devices*, 223 F.3d 1091, 1102 (9th Cir. 2000) ("Why would Congress carefully protect such technologic aids through the text of § 2703(7)(A)(i), yet leave them to the wolves of a Johnson Act forfeiture action?").

Section 1981 is the quintessential "general" statute. Enacted in the wake of the Civil War, it prohibits discrimination on the basis of a protected category "to make and enforce

contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. The Supreme Court has emphasized that Section 1981 has "broad terms." *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295–96 (1976)); *see also Arnold v. Ballard*, 448 F. Supp. 1025, 1028 (N.D. Ohio 1978) ("There is no real dispute that section 1981 a statute specifically enacted in 1866 to implement the broad concerns of the Thirteenth and Fourteenth Amendments is a much different creature than Title VII, which was enacted in 1964 as a complex, intricate statutory mechanism for the relief of racial discrimination in employment.").

In contrast, the Bank Secrecy Act and its implementing regulations provide a detailed framework requiring financial institutions to verify the identities of non-citizen customers using particular procedures that differ from those required for U.S. citizens. To be sure, Plaintiffs may argue that nothing in the Bank Secrecy Act *requires* a financial institution to automatically decline to open accounts for non-citizens, but that misses the point. The Bank Secrecy Act absolutely *does require* financial institutions to satisfy themselves that they have verified the identities of prospective accountholders. And citizenship is one of the data points used in identity verification. 31 C.F.R. § 1020.220(a)(2)(i)(A)(4). The regulations recognize that financial institutions in the United States are more readily able to reliably verify the true identity of U.S. citizens than non-citizens, in part because, for a non-citizen, it is more likely that "the bank is not familiar with the documents presented." *Id.* § 1020.220(a)(2)(ii)(B)(2). This is all the more true for an online-only financial institution.

That is why the alleged conduct fits within the mandate of the Bank Secrecy Act, which distinguishes between citizens and non-citizens; requires financial institutions to implement a CIP based on the particular risks inherent to its business; and subjects institutions without robust CIP programs to civil and even criminal penalties. These aspects of the Bank Secrecy Act and implementing regulations render that regulatory regime more specifically applicable to Plaintiffs' claims of how non-citizens can open accounts than does the broader, non-specific mandate of Section 1981. *Radzanower v. Touche Ross & Co.*, 426

U.S. 148, 153 (1976) (affirming order granting motion to dismiss and finding broad venue provision of the Securities and Exchanges Act superseded by the more specific venue provisions of National Bank Act, because Congress enacted the National Bank Act in response to a particularized problem); *Morton v. Mancari*, 417 U.S. 535, 544, 550 (1974) (holding employment preference for Native-Americans in the Indian Reorganization Act of 1934 precluded claim under the anti-discrimination provisions of the Equal Employment Opportunities Act of 1972, because "Congress was well aware that the proposed preference would result in employment disadvantages within the BIA for non-Indians. . . . the Indian preference statute is a specific provision applying to a very specific situation. The 1972 Act, on the other hand, is of general application. Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment."); *Cal. Trout, Inc. v. F.E.R.C.*, 313 F.3d 1131, 1137 (9th Cir. 2002) (finding general statute superseded by more specific one where "[t]he authority to issue annual licenses is a specific provision applying to a specific situation, i.e., the continued operation of a project pending relicensing. The CWA, on the other hand, is a general statute having broad application"). Under these circumstances, where the facts alleged show compliance with the Bank Secrecy Act, and no plausible reason for discrimination, there can be no liability under Section 1981.

The unpublished case of *Perez v. Wells Fargo* is inapposite, though it bears some superficial similarities to this case, and Plaintiffs will likely cite it. The claims there arose under Section 1981, the Unruh Act, and California's Unfair Competition Law, and challenged Wells Fargo's policy not to extend credit to Deferred Action for Childhood Arrivals ("DACA") recipients even with a citizen cosigner. *Perez v. Wells Fargo & Co.*, No. 17-CV-00454-MMC, 2017 WL 3314797, at *1 (N.D. Cal. Aug. 3, 2017). The court denied Wells Fargo's motion to dismiss the Section 1981 claim, in which it had argued the regulatory framework governing the extension of credit under the Equal Credit Opportunity Act ("ECOA") was the more specific statute and thus overrode the more general Section 1981. *Perez*, 2017 WL 3314797, at *3.

This case is materially different from *Perez* for two reasons.

*First*, Wells Fargo had extended credit to legal permanent residents with a citizen co-signer, but not for DACA recipients with a citizen co-signer. The court believed that Wells Fargo's concerns about ECOA compliance and creditworthiness of DACA recipients could be cured by imposing a citizen co-signer requirement. *Id*. at *6 ("[I]t would appear that, in either situation, the citizen co-signer could be held responsible for any non-payment by the alien."). Here, the concept of a co-signer is irrelevant; the Bank Secrecy Act's regulations, and the concerns animating those regulations, apply to all beneficial owners of accounts, primary or not. Whether a citizen co-signer can adequately protect a lender from the credit risk of a DACA recipient is of no moment here, because the presence or absence of a joint accountholder does nothing at all to (a) protect the public when it comes to financial crimes committed by the other accountholder whose identity cannot be sufficiently verified, or (b) aid a financial institution in meeting its Bank Secrecy Act requirements.

*Second*, the logic of the statutory scheme in *Perez* was intended to protect lenders from undue credit risk. Based on the Complaint, the court there found that by denying credit to a DACA recipient even if he or she had a co-signer, Wells Fargo was not acting to protect credit risk, allowing for a possible inference of discrimination. Here, in contrast, and as explained more below, there is no plausible inference of discrimination.

Moreover, courts often find public safety concerns to preclude an unbending and inflexible application of anti-discrimination laws. *See, e.g.*, 42 U.S.C. § 3604 (barring housing discrimination except where a "tenancy would constitute a direct threat to the health or safety of other individuals"); *Gaines v. N.Y.C. Transit Auth.*, 353 F. App'x 509, 510–11 (2d Cir. 2009) (facially discriminatory policy not actionable under Americans with Disabilities Act where "directive was motivated by legitimate public safety concerns"). The more general edicts of Section 1981 therefore must yield to the specific provisions of the Bank Secrecy Act to ensure public safety, a consideration not implicated in *Perez*.

Indeed, Plaintiffs allege Defendants stated in 2018 that the Bank Secrecy Act regulations prohibited them from opening these accounts, but assert conclusorily that this was

pretextual. Compl. ¶¶ 18–19. Plaintiffs do not explain what possible purpose the purported pretext would serve, or why a financial institution would elect not to open deposit accounts for any reason but its Bank Secrecy Act obligations. Simple's ultimate goal, after all, is to attract depositors, not turn them away. Deposit institutions compete vigorously for deposits because deposits are the source of their revenue. As the FDIC has explained:

> What happens to your money when you put it in a bank? It doesn't remain locked away in the bank vault – instead, the money you deposit into a savings account is used by the bank to make loans to other people and businesses in your community so that they have the money to pay for big expenses like houses and cars, or even to operate a business. *The bank charges interest on the loans, and it pays you interest for using your money to make these loans while keeping any remaining money as a profit.*[9]

There is no logic or sense to Plaintiffs' conclusory statement that restricting deposits on the basis of federal regulatory compliance is "pretextual"—what would the real purpose be? Plaintiffs cannot and do not allege that the policy is motivated by sheer animus against non-citizens, and the only plausible explanation for the CIP policy is that doing otherwise risks a failure to comply with the Bank Secrecy Act's requirements.

In sum, the Bank Secrecy Act and its implementing regulations provide a specific and detailed regulatory framework that requires financial institutions to sufficiently verify the identity of prospective account holders to prevent terrorism and serious financial crime. If that cannot be done because of the nature of the institution, the available methods of interaction with prospective account holders, and the documentary and non-documentary information available, then the institution must honor its specific obligations to comply with the Bank Secrecy Act and decline to open accounts for those customers. That compliance should not be, and is not, actionable under Section 1981.

---

[9]   RJN, Ex. 4 (*Learning Banks – How Banks Work*, Fed. Deposit Ins. Corp., https://www.fdic.gov/about/learn/learning/banks.html (last updated Jan. 30, 2018) (emphasis added).)

**B.      Because Defendants Were Complying With the Bank Secrecy Act, They Did Not Plausibly Discriminate on the Basis of Citizenship**

To establish a 1981 claim, a plaintiff must show (1) membership in one of the protected classes, (2) that the defendant had an intent to discriminate based on that class, and (3) discrimination concerning one or more of the activities enumerated in Section 1981 (*e.g.*, making contracts). *Pryor*, 288 F.3d at 569.

Here, there is no plausible allegation that Defendants discriminated on the basis of Chattopadhyay's citizenship. As explained above, the Bank Secrecy Act and its implementing regulations grant a financial institution nearly unfettered discretion to set up policies and procedures that would enable it to "know its customers" before they could open a deposit account, the *minimum* of which require Defendants to treat citizens and non-citizens differently. *Supra* at pp. 4–7. The statute and its regulations were designed to protect *all residents* of America from terrorist financing and other forms of criminal money laundering. As explained above, common sense dictates that it would be more difficult for an online-only institution to truly know its customers, and thus comply with the Bank Secrecy Act and its implementing regulations, than it would be for a traditional bank. *Iqbal*, 556 U.S. at 694 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Indeed, common sense would also dictate that there is no other plausible reason for denying non-citizens the opportunity to open deposit accounts—the lifeblood of any deposit institution. The Complaint surely does not offer one; *i.e.*, there is no allegation of any specific animus against non-citizens. And why would there be? Defendants are part of a global financial service group headquartered in *Spain*. And more depositors means more revenues: If opened, a non-citizen's deposit would be lending money *to the bank*. *Chang v. Redding Bank of Commerce*, 29 Cal. App. 4th 673, 681 (1994) ("As between a bank and the depositor such money becomes the property of the bank and the bank becomes the debtor of the depositor for the amount deposited."). A deposit institution's greatest financial incentive is to increase its

deposits and use that money to garner a higher return than the interest it is paying to depositors. In other words, other than the safety and security of our nation and compliance with federally imposed requirements, there is no common-sense, plausible incentive to deny deposit accounts to non-citizens.

Other cases that have had occasion to balance national security against discrimination claims agree. In a series of cases in which airline captains removed passengers from flights allegedly on the basis of race and in violation of Section 1981, courts found as a matter of law that the captains removed those plaintiffs for safety concerns, *not* on the basis of race. *See, e.g.*, *Al-Qudhai'een v. Am. W. Airlines, Inc.*, 267 F. Supp. 2d 841, 848 (S.D. Ohio 2003); *Dasrath v. Cont'l Airlines, Inc.*, 467 F. Supp. 2d 431, 445–47 (D.N.J. 2006); *Al-Watan v. Am. Airlines, Inc.*, 658 F. Supp. 2d 816, 829 (E.D. Mich. 2009).

In all these cases, the Federal Aviation Act, like the Bank Secrecy Act here, provided air carriers significant discretion; in the cases of the airlines, it was discretion to remove passengers for "safety" reasons. 49 U.S.C. § 44902(b). But the airlines' decisions could not be arbitrary or capricious, and removing passengers solely on the basis of race would be considered arbitrary or capricious. *See, e.g.*, *Al-Watan*, 658 F. Supp. 2d at 825. What the courts looked for then was whether the airlines' actions in removing the passengers were in good faith and rational. *Dasrath*, 467 F. Supp. 2d at 445; *see also Cerqueira v. Am. Airlines, Inc.*, 520 F.3d 1, 17 (1st Cir. 2008) ("Here, there is absolutely no evidence that either the Captain himself or the SOC manager had discriminatory animus, let alone that their decisions to refuse to transport a passenger, which were made under time pressure, were based on any discriminatory animus."). If in good faith, then the airlines were removing passengers based on safety and *not* based on race, precluding any finding of a violation of Section 1981. *Al-Watan*, 658 F. Supp. 2d at 828 ("Plaintiffs have not set forth evidence of racial bias by any of the flight attendants or the captain."); *Dasrath*, 467 F. Supp. 2d at 449 ("It's truly unfortunate that persons such as Mr. Dasrath are seriously inconvenienced in the interests of flight security . . . These are the burdens that the nature of the times imposes upon us. . . . Mr.

Dasrath [was] removed [] solely for security reasons, and [] Mr. Dasrath's race was not a motivating factor.").

The same analysis applies here. At the Complaint's very best, Plaintiffs have alleged Defendants' conduct could have been motivated either by unlawful discrimination or, more likely, by compliance with the Bank Secrecy Act and the requirements that it truly "know its customers." Plaintiffs' request that the court conclude that Defendants were acting based on specific non-citizen animus rather than in the interests of national security and the requirement that they adequately know their customers is wholly implausible. Plaintiffs' allegations therefore fail to state a claim. *See Twombly*, 550 U.S. at 567 (acknowledging that parallel conduct was consistent with an unlawful agreement, the court nevertheless concluded that it did not plausibly suggest an illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior).

To the extent Plaintiffs point to their one-sentence conclusion that Defendants' justification for its policies "was a pretext," that allegation is a threadbare conclusion the court must disregard when ruling on this Motion. *Iqbal*, 556 U.S. at 679 ("In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").

With all of this in mind, this case is very similar to, if not controlled by, *Iqbal*:

> We begin our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth. Respondent pleads that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." . . . The complaint alleges that Ashcroft was the "principal architect" of this invidious policy . . . and that Mueller was "instrumental" in adopting and executing it . . . . These bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim, 550 U.S., at 555, 127 S.Ct. 1955, namely, that petitioners adopted a policy " 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.

*Id*. at 680–81. Similarly, here, when the Court cuts through all of the conclusory assertions in this Complaint, there will be a policy that undoubtedly has "adverse effects" on non-citizens

in that they could not open accounts through Simple, but the policy was not created "because of" the fact that they are non-citizens; it was created out of a reasonable inability at the time to verify non-citizens' identities. And here, critically, there was no other plausible reason to deny non-citizens accounts. Accordingly, "[a]s between that obvious alternative explanation for the [policy], and the purposeful, invidious discrimination [Plaintiffs] ask[] us to infer, discrimination is not a plausible conclusion." *Id*. at 682 (internal quotations and citations omitted).

Because discrimination is not a plausible conclusion based on the facts Plaintiffs actually allege, they have not alleged and cannot allege Defendants' actions were because of the fact that one of the plaintiffs was a non-citizen as opposed to the Defendants' reasonable inability at the time to verify that plaintiff's identity. There was no discrimination, and Plaintiffs have failed to allege a violation of Section 1981, warranting dismissal.

### C.   Plaintiffs' Unruh Act Claim Fails as a Matter of Law Because the Challenged Policies Serve Public Policy and Are Non-Arbitrary

Like Section 1981, California's Unruh Act broadly prohibits business establishments from discriminating against any person based on a non-exclusive list of protected characteristics. Cal. Civ. Code §§ 51 *et seq*. However, not all discrimination is actionable. Differential treatment is permitted if there is a "compelling social policy" favoring it, *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 38 (1985), and "Unruh prohibits only arbitrary, invidious or unreasonable discrimination," *Sargoy v. Resolution Tr. Corp*., 8 Cal. App. 4th 1039, 1043 (1992). *See also Sargoy*, 8 Cal. App. 4th at 1043 ("California courts have uniformly found discriminatory treatment to be reasonable, and thus nonarbitrary, where a strong public policy exists in favor of such treatment.").

As discussed above, the challenged conduct furthers the compelling social policy of preventing terrorist financing by ensuring the identification of those with access to the banking system. Therefore, the Unruh Act cannot prohibit it—courts have found far less critical social policies to preclude liability. *See, e.g.*, *Pizarro v. Lamb's Players Theatre*, 135 Cal. App. 4th 1171, 1176 (2006) (affirming order sustaining demurrer to Unruh Act claim

because "a theater ticket discount allows greater access to the theater, [thus] public policy favors the disparate treatment, whether the discount is made available to children, seniors or 'baby-boomers'"); *Starkman v. Mann Theatres Corp.*, 227 Cal. App. 3d 1491, 1499–500 (1991) (holding senior citizen discount not actionable age discrimination under Unruh Act because "[e]ncouraging and enabling citizens to enjoy life and the benefits of our society as they reach an elderly age is a favored public policy"); *Sargoy*, 8 Cal. App. 4th at 1043.

For the same reasons, the policy of restricting accounts to U.S. citizens is not arbitrary, invidious, or unreasonable, because the policies focus on verifying identity and do not "emphasize[] irrelevant differences" or "perpetuate[] irrational stereotypes." *Cohn v. Corinthian Colls., Inc.*, 169 Cal. App. 4th 523, 528 (2008) (citing *Koire*, 40 Cal. 3d at 34–35). The differences between non-citizens and citizens are not irrelevant for purposes of documenting the identities of online banking applications. The different verification requirements the Bank Secrecy Act provides for citizens versus non-citizens shows Defendants are not acting based on "stereotypes" but instead based on rational assessments of the risks in the totality of the circumstances. *Pizarro*, 135 Cal. App. 4th at 1176 ("We conclude this age-based discount is permissible as reasonable and not arbitrary. A reason given by defendant for providing the discount admission to 'baby-boomers' was to encourage attendance at a family-based entertainment event."); *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1502 (1999) (affirming order sustaining demurrer to Unruh Act claim because "[b]usinesses retain the right under the Unruh Act to establish reasonable regulations that are rationally related to the services performed and facilities provided"); *Cohn*, 169 Cal. App. 4th at 529 (holding Unruh Act claim failed because "[w]e are not convinced the Angels' tote bag giveaway [only to mothers] was in anyway unreasonable, arbitrary, or invidious discrimination"). Not only is it reasonable for Defendants to take all possible precautions to protect the health and safety of the nation, but it is also reasonable for Defendants to ensure they will not face the severe penalties available under the Bank Secrecy Act if their AML/CIP policies are found to be inadequate.

The Bank Secrecy Act reflects a legislative policy that AML/CIP procedures should be tailored to the particular risks inherent to each financial institution, and recognizes that non-citizens can pose a higher risk than citizens. *Javorsky v. W. Athletic Clubs, Inc*., 242 Cal. App. 4th 1386, 1399 (2015) ("[L]egislative enactments are sufficient, but unnecessary, to evince the public policy."); *Koire*, 40 Cal. 3d at 38 ("[P]rice discounts for children or for the elderly are justified by social policy considerations as evidenced by legislative enactments"); *Lazar*, 69 Cal. App. 4th at 1503 (affirming order sustaining demurrer to Unruh Act claim arising out of minimum age requirements because "the legislative scheme anticipates and expressly approves the adoption of minimum age requirements by car rental companies"). Implementing a CIP policy that accounts for that risk is not a violation of the Unruh Act as a matter of law.

For these reasons, Plaintiffs' Unruh Act claim should be dismissed.

### D.       Unite the People Fails to State a Claim Because It Did Not Suffer Any Alleged Discrimination

Plaintiff Unite the People's claims fail as a matter of law for the simple reason that it does not allege it suffered any discrimination at Defendants' (or anyone else's) hands. Plaintiffs do not assert that Unite the People ever tried to open an account, much less that its application was denied based on citizenship. Nor do Plaintiffs assert Unite the People had an account that was closed or that it was deterred from applying for one. The absence of these allegations is fatal to Unite the People's claims.

Again, to state a Section 1981 claim for contractual discrimination, a plaintiff must show (1) membership in one of the protected classes, (2) that the defendant had an intent to discriminate based on that class, and (3) discrimination concerning one or more of the activities enumerated in Section 1981 (*e.g*., making contracts). *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002); *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001). Unite the People alleges no such discrimination. Further, Unite the People as a corporation should not be able to sue under Section 1981 in any event because it

1  does not have the "imputed" identity of a non-citizen. *Nat'l Ass'n of African Am.-Owned*

2  *Media v. Charter Commc'ns, Inc.*, 915 F.3d 617, 622 n.3 (9th Cir. 2019).

3          Unite the People's inability to assert an Unruh Act claim is even clearer. Unite the

4  People has not alleged it is "aggrieved" under the Unruh Act. *Midpeninsula Citizens for Fair*

5  *Hous. v. Westwood Inv'rs*, 221 Cal. App. 3d 1377, 1383 (1990), reh'g denied and opinion

6  modified (July 31, 1990) (citation omitted); *see id.* at 1384 ("[W]e reject [plaintiff

7  organization's] contention that the Legislature intended, by adding the language 'a person

8  aggrieved by the pattern or practice,' to confer standing upon an expanded class of plaintiffs

9  whose civil rights had not been personally violated."); *Pallamary v. Elite Show Servs., Inc.*,

10  No. 17CV2010-WQH-BGS, 2018 WL 3064933, at *4 (S.D. Cal. June 19, 2018) (dismissing

11  Unruh Act claim under Rule 12(b)(6) for failure to allege discrimination). For this additional

12  reason, Unite the People's claims should be dismissed.[10]

13      **E.      The Claims Against BBVA Compass Bancshares and BBVA Compass**

14              **Financial Corporation Are Unsupported by Any Factual Allegations and**

15              **Should Be Dismissed**

16          Plaintiffs must make specific factual allegations to support their claims against *each*

17  named defendant to survive a motion to dismiss. But the Complaint does not allege that

18  BBVA Compass Bancshares, Inc. or BBVA Compass Financial Corporation did anything—all

19  the substantive allegations concern Simple and Compass. *See* Compl. ¶¶ 14–17. Plaintiff

20  alleges that she "attempted to sign up for an account *with Simple*" several times but was

21  unable to do so. *Id.* at ¶¶ 14–15 (emphasis added). She alleges she was denied a "*Simple* Visa

22  Card" and "full use of the *Simple* iOS and Android applications[.]" *Id.* at ¶ 17 (emphasis

23  added). And she alleges that in 2017, Simple closed all accounts held by non-citizens. *Id.* at

24  ¶ 16. Because there are no factual allegations pleaded against them, Plaintiffs' claims against

25  BBVA Compass Bancshares, Inc. and BBVA Compass Financial Corporation should be

26  dismissed. *See In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d 984, 1002 (N.D. Cal. 2009)

27

28      [10]   For the reasons explained in Defendants' concurrently filed motion to dismiss the
        Complaint under Rule 12(b)(1), Unite the People also lacks standing.

("There are no allegations in the complaint that tie the holding companies to the alleged conspiracy to set the interchange fee. Accordingly, dismissal of the SAC is GRANTED as to the corporate parent Defendants."); *Innerlite, Inc. v. Zirc Dental Prod., Inc*., No. CV137501DOCRNBX, 2014 WL 12601024, at *5 (C.D. Cal. Sept. 2, 2014) (dismissing holding company because "no facts have been alleged to support a claim" against that specific entity).

To be sure, Plaintiffs allege that "when Compass Bank, or, in the alternative and/or in addition to, BBVA Compass Bancshares, or, in the alternative and/or in addition to, BBVA Compass Financial Corporation, acquired [Simple] in 2017, the companies, acting in tandem, closed all accounts belonging to non-citizens[.]" Compl. ¶ 16. But conclusory allegations that crudely "lump together" defendants do not satisfy Rule 8. *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (dismissing claims where "all defendants are lumped together in a single, broad allegation"); *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) (dismissing claims where "[t]he complaint lumps defendants (and apparently others) together and fails to distinguish adequately claims and alleged wrongs among defendants and others"); *Regents of the Univ. of Cal. v. Aisen*, No. 15-cv-1766-BEN, 2016 WL 4096078, at *4 (S.D. Cal. Apr. 22, 2016) (dismissing claims against defendants where the complaint mentioned them "only as members of a larger collective group of" defendants); *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005) (dismissing defendants when complaint merely lumped them in with other bank defendants); *City of Miami v. JPMorgan Chase & Co.*, 171 F. Supp. 3d 1309, 1313–14 (S.D. Fla. 2016) (dismissing complaint for "impermissibly lumping together four separate corporate [bank] defendants . . . including a parent holding company . . . and then making undifferentiated allegations against that composite entity. . . failure to allege facts as to each of these . . . Defendants violates Rule 8 and Twombly/Iqbal").

Because Plaintiffs have pleaded no factual allegations against BBVA Compass Bancshares, Inc. or BBVA Compass Financial Corporation other than threadbare and

implausible conspiracy allegations, the claims against those defendants are properly

dismissed.

**VI.     CONCLUSION**

For the foregoing reasons, both of Plaintiffs' claims fail as a matter of law. The

Complaint should be dismissed with prejudice and without leave to amend, and judgment

entered in favor of Defendants.


Dated: May 24, 2019                             **KATTEN MUCHIN ROSENMAN LLP**


                                                By: _____/s/ Gregory S. Korman_____

                                                Attorneys for Defendants BBVA Compass
                                                Bancshares, Inc., Simple Finance Technology
                                                Corp., BBVA Compass Financial
                                                Corporation, and Compass Bank

DEFENDANTS' MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)