Erin L. Brinkman (SBN 289967)
Unite the People
3003 W. Olympic Blvd Ste. 1031
Los Angeles, CA 90006
Telephone: (888) 245-9393
E-mail: erin@unitethepeople.org
*Attorney for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**Amitabho Chattopadhyay,**
*et. al.*
**Plaintiffs,**

*v.*

**BBVA Compass Bancshares, Inc.,**
*et. al.*,
**Defendants.**

**Case No. 3:19-cv-01541-JST**

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

**Date:** October 2, 2019
**Time:** 2:00 p.m.
**Room:** Courtroom 9 - Floor 19
450 Golden Gate Ave.
San Francisco, CA 94102

**Judge:** Hon. Jon Tigar

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiffs in the above-captioned case hereby submit their opposition to defendants' Motion to Dismiss Pursuant to Rule 12(b)(6).

Respectfully submitted,
/s/ Erin L. Brinkman
Erin L. Brinkman
August 19, 2019
Counsel for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants have brought up one main argument in favor of dismissal: that they are justified in discriminating against non-citizens with valid social security numbers to in order to avoid running afoul of a money laundering statute which has not prevented any other national banks from opening accounts for them[1]. The class consists predominantly of highly skilled workers, executives, NATO employees, ambassadors and diplomats, traders, investors, students, asylees and legal immigrants (*see* Social Security Administration POMS RM 10211.530), all of which have been exhaustively evaluated by the Department of Homeland Security. *See* 8 U.S.C. 1225.

### A. The defendants' Bank Secrecy Act argument, assuming *arguendo* that it is in any way applicable to this discussion, is not ripe for disposition in a motion to dismiss.

At the outset, Defendants raise matters outside the pleadings that are simply not appropriate for disposition at this early stage. Even if their patently absurd suggestion that non-citizens with valid social security numbers are somehow more difficult to identify is true (Defendants' Motion to Dismiss Complaint Pursuant to Rule 12(b)(6), ECF #19, ("Defendants' Motion") pgs. 5-6), that would be a factual question to be decided on a motion for summary judgment, after both parties have had the opportunity to conduct adequate discovery (especially with respect to the data, if any, upon which Defendants relied to reach such a determination[2]). Defendants' argument that the Bank Secrecy Act ("BSA") requires them to discriminate against non-citizens is tantamount to asserting that individual banks have been delegated nonreviewable authority by Congress to exclude any category of person from opening a bank account by them according to any criteria which they see fit. This is a frivolous argument; Defendants do not cite any provision

1 There are two banks of which plaintiffs are aware, PNC and Huntington Bank, which only allow non-citizens to apply in person. (Defendant Compass Bank engages in this practice as well for its in-person operation.) While this is still discriminatory and a violation of the Act, it does not match the audacity of the total denial of service which Simple engages in. Some banks require a picture of photo ID or simply don't allow anyone to sign up online, which is another matter altogether.

2 Defendants have furnished neither the plaintiffs nor the court with any evidence that they even operate any so-called 'Customer Identification Program', nor any particulars thereof besides that it requires them to exclude all non-citizens.

of the BSA which suggests that banks are to be allowed to discriminate against non-citizens in this matter and be completely immune to liability for their actions. Instead, they merely cite a provision of the relevant regulations, 31 C.F.R. § 1020.220(a)(2)(iii)(A), which provides that the bank's Customer Identification Program should describe when the bank should not open an account. Nothing in the statute or regulations can be construed to immunize Defendants for their clearly and arbitrarily discriminatory policy.

**B. The defendants' Bank Secrecy Act argument has no basis in fact or law.**

**I. The PATRIOT Act did not repeal the Civil Rights Act of 1866, implicitly or explicitly; requiring banks to identify their customers does not require them to refuse to deal with non-citizens.**

Defendants' claim is that in implementing the BSA, Congress gave license to the defendants to discriminate against any non-citizen, so long as the bank codifies this discrimination in the form of a 'Customer Identification Program' intended to verify the identity of those who would open accounts with the bank based on the institution's risk assessment. Defendants' Motion, pg. 14.

This purported justification Defendants provide for their discriminatory conduct is made on the basis of an erroneous statutory interpretation. "When there are two acts upon the same subject, the rule is to give effect to both if possible... There must be a positive repugnancy between the provisions of the new law and those of the old; and even then the old law is repealed by implication only, pro tanto, to the extent of the repugnancy." *United States v. Borden Co.*, 308 U.S. 188, 198-99 (1939).

In evaluating those individuals applying to open online bank accounts, Defendants were confronted with two complementary duties: to verify the identity of potential customers for national security purposes, pursuant to the BSA, and treating all of their customers the same as they would treat a citizen, pursuant to 42 U.S.C. § 1981 ("Section 1981"). They have affirmatively chosen to not to do the latter in the process of supposedly attempting to fulfill their obligation to do the former. The difference (not difference*s*) between non-citizens and citizens in the Bank

Secrecy Act are directly targeted towards ensuring that non-immigrant non-citizens without taxpayer identification numbers can open bank accounts - a totally different issue than the issue presented here, where non-citizens with valid social security numbers share an identical position for the purposes of opening a bank account as do U.S. citizens.

Yes, as the plaintiffs claim, the BSA distinguishes between citizens and non-citizens. It does so in one respect, and in one respect only: while citizens must provide a social security number, non-citizens are not required by law to do so; they can choose to provide a social security number, an ITIN, an A-number or even their own government-issued ID. Indeed, this choice of which document to provide was intended to *avoid* the discrimination which defendants believe the BSA legalized[3]. 31 C.F.R. 1020.220(a)(2)(i). This underscores Congress' recognition of the statistically lesser threat that non-citizens pose, and clearly undermines defendants' claim that Congress has given them license to discriminate against non-citizens in this way.

In other words, there is a 'difference' between citizens and non-citizens in the Bank Secrecy Act in the way that there is a 'difference' between disabled and non-disabled patrons in the Americans with Disabilities Act. The defendants may as well refuse service to people in wheelchairs on the basis that the relevant regulations prescribe possible methods for achieving equal access to facilities for wheelchair users.

Defendants claim that because the BSA and Section 1981 regulate the same conduct, the provisions of the BSA necessarily annihilate the long-established protections of one of this country's most historically significant and crucially important civil rights legislation. Defendants make this ridiculous claim based upon a tenet of statutory interpretation that they misconstrue. Rather, the "general/specific canon is not an absolute rule," but, rather, one of statutory construc-

3 This issue has been subject to litigation in the opposite direction in the California state courts, with the argument that the requirement that citizens must provide a valid social security number discriminates against U.S. citizens. See *Howe v. Bank of America, NA*, 179 Cal. App. 4th 1443 (2009) (affirming grant of demurrer to complaint because federal law requires social security number collection, allowing alternative forms of ID for foreigners). The regulation was implemented in such a way to ensure that non-work-authorized foreigners, such as businessmen and students, could open bank accounts in the country.

tion. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 646 (2012) In that regard, "[i]t is, of course, a cardinal principle of statutory construction that repeals by implication are not favored." *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976).

Defendants' citations to the contrary are inapposite. Their particular application of *Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976) is inapposite because one statute clearly superseded the other, one set of choice of venue provisions being incompatible with another; *Morton v. Mancari*, 417 U.S. 535 (1974), on the other hand, clearly supports *Plaintiffs'* position, because a "longstanding, important component" of public policy and Congress' implementation of the 14th Amendment is protection against discrimination[4]. An example (inherently hypothetical, because the weakness of the defendants' argument is such that no published citation may be found for it) of defendants' logic would be an argument that 28 U.S.C. § 1332(a) repealed 28 U.S.C. § 1331, barring all cases arising under the Constitution, laws or treaties of the United States from being brought in federal court.

Plaintiffs' counsel knows better than to attempt to cite unpublished, pending cases. As such, Plaintiffs feel no need to argue the similarity between this case and *Perez v. Wells Fargo & Co.*, No. 17-CV00454-MMC, 2017 in depth at this juncture. Nonetheless, the defendants bizarrely continue their argument in this respect by suggesting that non-citizens would inherently "constitute a direct threat to the health and safety of other individuals" if allowed to open a bank account with them. 42 U.S.C. § 3604. Would a landlord be justified in refusing to rent for non-citizens because, in his subjective judgment, he fears they might bomb the complex simply because they are non-citizens?

Defendants then analogize a non-citizen not being allowed to open a bank account to a train conductor with hearing challenges only being allowed to operate trains without passengers in them. Defendant's Motion, pg. 11. The analogy is lost on plaintiffs. There is simply no logical connection between one and the other.

4 Also, this is an example where an earlier provision was held to not be subject to implied repeal by the enactment of a later, general statute. As much as the defendants would like it to have done, the PATRIOT Act was not intended to abolish all civil rights protections for non-citizens.

## II. The defendants' premature factual arguments are predicated on baseless stereotypes.

Defendants appear to be obsessed with the 'alien-ness' of non-citizens. They ponder at length, for example, over the possibility that non-citizens may present a plethora of foreign, inscrutable documents which they would then be forced to interpret and verify the authenticity of. Defendants' Motion, pp. 12-13. Defendants neglect to acknowledge that non-citizens with social security numbers have state-issued drivers' licenses and identification cards. 13 Code of California Regulations §§ 15.00 & 16.04. They have passports with machine-readable visas, containing photographs and identifying information. They possess the USCIS Employment Authorization Document or permanent resident card. Each of these documents, in addition to foreign passports, are generally accepted for identification purposes by government agencies and other banks. *See* Plaintiffs' Request for Judicial Notice, No. 3.

By definition, a non-citizen with a valid social security number can be more quickly and easily vetted than any citizen. This is because non-citizens must undergo numerous and lengthy background checks in order to obtain the antecedent status which gives them work authorization. When they obtain a social security number, their assigned registration number(s) are checked electronically or, if that is unsuccessful, by a review of paper records, before a number is issued. They are more well-identified than any other type of person present in this country, each of them literally handpicked by the federal government to reside in the United States.

Accordingly, it seems Defendants believe they know better than the federal government what constitutes a security risk. To justify their illegal discrimination, they cling to a federal law that neither mandates nor condones their discriminatory conduct. Ironically, this law, the BSA, was written in such a way as to avert discrimination of the kind perpetrated by Defendants and accommodate the opening of bank accounts by non-citizens beyond even the category asserted in this action.

## III. Exactly what the defendants' irrational and unsubstantiated rationale was a pretext for is irrelevant.

Defendants further argue that, because the plaintiffs have not alleged exactly what drove Defendants' discriminatory behavior, Plaintiffs have failed to state a cause of action.

Certainly, Defendants' actual motivations are a mystery. As they admit in their memorandum, they could be terrified, more than any other bank in the country, that the majority of non-citizens with valid social security numbers may in fact be, in general, terrorists, gangsters, foreign dictators, or other nefarious characters. Similarly irrational concerns no doubt propelled BBVA, in the absence of any similar statutory justification, to convert funds which they held in trust for ordinary Chinese citizens in Spain[5]. Perhaps, given their record, it is foolish for non-citizens to sue for the right to open an account with them: they may just steal their money after the fact and hope that the affected individuals are too afraid or lack the resources to sue.

For good reason, however, Defendants' actual motivations for their blatant discrimination against non-citizens are irrelevant. Two simple facts remain: Defendants (1) refused to contract with Plaintiffs, (2) a substantial motivating reason for this discrimination being that Plaintiffs were non-citizens. Neither the Unruh Act nor the Civil Rights Act requires that Plaintiffs prove an alternative motive. 42 U.S.C. § 1981; California Civil Jury Instructions No. 3060.

Incapable of finding anything remotely relevant, defendants instead cite a variety of district court cases from Ohio, New Jersey and Michigan applying 49 U.S.C. § 44902(b). These cases, irrelevant to the case at bar, provides air carriers with the discretion to refuse to transport passengers if the carrier believes that they may be inimical to safety, with"[s]uch... refusal" not "giv[ing] rise to a claim for damages under either federal or [state] law unless the carrier's decision was arbitrary and capricious." *Williams v. Trans World Airlines*, 509 F.2d 942, 948 (2d Cir.1975). Here, no such immunity, explicit or implied, exists for Defendants. Moreover, in each of these cases, the fundamental theme is that of a case-by-case, time-sensitive determination to remove passengers who the captain reasonably perceived, mistakenly, to be acting suspiciously e.g. pacing about and apparently trying to get into the cockpit, (*Al-Qudhai'een v. America West Air-*

5 *Furious Chinese blast 'racist' Spanish bank for money laundering bans,* South China Morning Post (2019), https://www.scmp.com/news/world/europe/article/2186410/furious-chinese-condemn-racist-spanish-bank-bbva-saying-it-locked (last visited May 26, 2019)

*lines, Inc.*, 267 F. Supp. 2d 841 (S.D. Ohio 2003)), two people apparently pretending not to know one another yet whispering to each other, one of them shifting their duffel bag around nervously (*Dasrath v. Cont'l Airlines, Inc.*, 467 F. Supp. 2d 431 (D.N.J. 2006)), a man claiming to be traveling alone yet evidently having come to the airport together with a group of five or six other men and staring intently at a flight attendant. *Al-Watan v. Am. Airlines, Inc.*, 658 F. Supp. 2d 816 (E.D. Mich. 2009).

Nonetheless, the defendants' attempt to apply the Federal Aviation Act, however weak, perfectly betrays the nature of their policy. Rather than the case-by-case determinations which the FAA requires for this qualified immunity to apply, the alternative conduct—in which the defendants admit to engaging—is a total exclusion of all non-citizens, including non-citizens with valid social security numbers.

Assuming *arguendo* that the allegations in the complaint are insufficient to survive a motion to dismiss, Defendants' own motion, consisting of a sustained barrage of repugnant stereotypes and irrational fears about non-citizens, is the most powerful argument in favor of awarding Plaintiffs leave to amend. Moreover, their behavior need not be rational for it to be actionable: their explicitly stated, irrational belief that non-citizens with valid social security numbers pose a greater risk of terrorist or money-laundering activity is an impermissible rationale in itself.

**C. Defendants' Unruh Act public policy argument has no basis in fact or law.**

Defendants' assert that their desire to prevent terrorist financing is sufficiently compelling that it legally permits them to bar non-citizens possessing valid social security numbers from opening bank accounts with them. Defendants have provided no sound argument, much less any compelling evidence, that their policy is nonarbitrary, or that there is any greater risk in opening bank accounts for non-citizens with social security numbers than for citizens; even if they had provided any such information, this would simply present a factual question to be determined with through a thorough discovery process. Defendants' argument is effectively equivalent to an argument that Defendants would be justified in barring elderly clients because, in their personal, unreviewable, unevidenced opinion, these potential customers may be more likely to commit

fraud. For good reason, the *only* examples that can be provided by Defendants are examples where a certain discount has been provided based on age[6] or where a gift bag was given only to mothers of all genders[7], not where there has been a total denial of service based on some kind of unsubstantiated notion that a statutorily enumerated class of individuals is more likely than any other class to pos  a threat to the safety of others.

**D. Sufficient factual allegations have been pled against Defendants. Even if this Court finds to the contrary, leave to amend should be granted.**

Plaintiffs' claims against BBVA and its subsidiaries, a brand which has a well-documented history of discriminating against non-citizens in countries where they operate, are as well-pled as they can be given the limited amount of public information available regarding the company's internal structure. Even if specific allegations of discrimination have not been adequately alleged against each and every defendant, all defendants may be held liable on a theory of conspiracy because they each encouraged, financed and collaborated in implementing their discriminatory agenda. A conspirator cannot be absolved of liability merely because their involvement was limited to encouraging, financing or collaborating in their illegal behavior.

## Conclusion

The most powerful citations against the defendants' motion are (1) their own memorandum in support thereof and (2) common sense. When it comes down to it, the only thing the defendants can offer is speculation that the identities of non-citizens may not be as ascertainable

6 The intermediate state appellate courts are split on the issue of senior discounts; while the Second District has stated that discounts to 18-30 year olds may not be awarded because they are merely more likely to be budget constrained, regardless of any statistical analysis supporting that supposition, because there are significant exceptions to that general rule (*Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138 (2018)), the First District has decided the polar opposite. *Javorsky v. Western Athletic Clubs, Inc.* (2015) 242 Cal.App.4th 1386. Because there is no lateral stare decisis in the California intermediate appellate courts, this issue is unlikely to be resolved until the California Supreme Court decides it. Of course, the issue is still irrelevant to the total denial of service at issue here.

7 Gender-based *discounts,* on the other hand, run afoul of the Unruh Act. *Koire v. Metro Car Wash*, 40 Cal.3d 24 (1985). The senior discount argument originates from dicta which has on occasion been discarded. See *Candelore*, supra.

as those of citizens, when the opposite is judicially noticeable, and that, in direct contrast to what the federal government has determined about these individuals, they believe that non-citizens with valid social security numbers pose an immediate threat to national security.

This is not a defense: it is an admission.

The motion should be denied.

Respectfully submitted,
/s/ Erin L. Brinkman
Erin L. Brinkman
August 19, 2019
Counsel for Plaintiffs