UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMITABHO CHATTOPADHYAY,<br><br>   Plaintiff,<br><br>   v.<br><br>BBVA COMPASS BANCSHARES, INC., et al.,<br><br>   Defendants. | Case No. 19-cv-01541-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: ECF No. 18, 19 |

Before the Court are Defendants' motions to dismiss. Defendants BBVA Compass Bancshares, Inc. and BBVA Compass Financial Corporation ("BBVA Defendants") move to dismiss for lack of personal jurisdiction. ECF No. 18. All Defendants move to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 19. The Court will grant the motions in part and deny them in part.

**I.  BACKGROUND**

The complaint alleges the following:  Plaintiff Amitabho Chattopadhyay is "a native and citizen of the Republic of Singapore and an alien lawfully admitted for permanent residence. She has been issued a valid [S]ocial [S]ecurity number by the Social Security Administration."[1] ECF No. 1 ¶ 3. She attempted three times to open an online bank account with Defendant Simple Finance Technology Corporation but was barred from doing so because she is not a U.S. citizen. *Id.* ¶¶ 14-15. Simple "is an Oregon corporation operating in the State of California and a subsidiary of Compass Bank, or, in the alternative and/or in addition to, BBVA Compass

---

[1] The complaint also contains allegations on behalf of an organization, Unite the People. *See* ECF No. 1. However, the parties have stipulated to dismissal of Unite the People's claims with prejudice. ECF No. 23 at 3.

Bancshares, or, in the alternative and/or in addition to, BBVA Compass Financial Corporation." *Id.* ¶ 8. Defendants BBVA Compass Bancshares, Compass Bank, and BBVA Compass Financial Corporation "do[] business under the name 'Simple'" and "operate[] substantial business within the state of California, including both an online presence and physical branches." *Id.* ¶¶ 5-7.

The complaint also alleges that: Simple originally opened accounts for non-citizens but stopped doing so when "Compass Bank, or, in the alternative and/or in addition to, BBVA Compass Bancshares, or, in the alternative and/or in addition to, BBVA Compass Financial Corporation, acquired it in 2017." *Id.* ¶ 16. Simple "is an alter ego of Compass Bank, or, in the alternative and/or in addition to, BBVA Compass Bancshares, or, in the alternative and/or in addition to, BBVA Compass Financial Corporation." *Id.* Or, "in the alternative":

> Simple conspired with Compass Bank or, in the alternative and/or in addition to, BBVA Compass Bancshares, or, in the alternative and/or in addition to, BBVA Compass Financial Corporation, to deny its services to aliens in that it provided the web interface which automatically rejects non-citizen applicants on the basis of their immigration status, intending that its interface be used to discriminate against residents of California on the basis of their citizenship and immigration status, and further refuses to issue its Simple Visa Card and denies the full use of its Simple iOS and Android applications, as well as the rest of its web interface, to aliens.

*Id.* ¶ 17. Defendants stated that regulations implementing the Bank Secrecy Act "required them to discriminate against legal permanent residents," but "no other bank has a policy barring permanent residents from opening bank accounts with them. Rather, no documentation is generally required besides questions about whether a person is a U.S. citizen or permanent resident and their [S]ocial [S]ecurity number." *Id.* ¶ 18-19.

Chattopadhyay seeks to represent both a nationwide class and a California class of non-citizens who resided in the United States, had a valid Social Security number, and were unable to open a bank account with Simple Bank or had a Simple Bank account that was terminated. *Id.* ¶ 21. She brings claims for unlawful alienage discrimination under 42 U.S.C. § 1981 and violation of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 51.5, 52.

**II.  JURISDICTION**

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

### III. REQUESTS FOR JUDICIAL NOTICE

Before turning to the merits of Defendants' motions to dismiss, the Court addresses the parties' requests for judicial notice. "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Judicial notice provides an exception to this rule. *Id.*

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." If a fact is not subject to reasonable dispute, the court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). The Ninth Circuit has cautioned, however, that courts must be wary that the "use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Khoja*, 899 F.3d at 998. Accordingly, "a court cannot take judicial notice of disputed facts contained in . . . public records," when, for instance, "there is a reasonable dispute as to what the [record] establishes." *Id.* at 999, 1001.

Defendants request that the Court take judicial notice of five sets of documents from publicly available government websites. ECF No. 20 at 2-3. Chattopadhyay does not oppose these requests, which the Court grants. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of information "made publicly available by government entities" online, where "neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein").

Defendants request judicial notice of a sixth set of documents from Unite the People's website. ECF No. 20 at 3. This request is denied as moot because Unite the People has been dismissed from this case. ECF No. 23.

Chattopadhyay requests judicial notice of the following facts:

    1. No bank besides the defendants' 'Simple Bank' categorically

3

      bars all non-citizens from opening a bank account.

2. No national bank which allows people to open an account online besides PNC Bank and defendant Compass Bank require non-citizens to open an account in person.

3. State-issued drivers' licenses and identification cards, foreign passports, Permanent Resident cards and Employment Authorization Documents, all documents which may be obtained by non-citizens with valid social security numbers, are generally accepted as a form of identification by governments and private entities.

4. There is no central database or a registry of the identities of U.S. citizens.

5. All non-citizens who have obtained a social security number have their fingerprints, photos, names, dates of birth, eye color, hair color, current address and other biometric information on file with the federal government.

ECF No. 32-1 at 1-2 (footnote omitted). The Court denies these requests because Chattopadhyay has failed to establish that any of them are "not subject to reasonable dispute." Fed. R. Evid. 201(b). Instead of being "like the obvious fact that surgery is painful and can have dire consequences" or "common knowledge about the general shape of snowmen," the purported facts are "more like the kind of specific detailed knowledge" that courts have found to be improper subjects of judicial notice. *United States v. Mariscal*, 285 F.3d 1127, 1132 (9th Cir. 2002). It is insufficient to assert, without more, that a fact "is generally well known within the trial court's territorial jurisdiction." ECF No. 32-1 at 2. Nor is it sufficient to cite generally to "application forms, procedures, and memoranda published by USCIS and the Department of State on their official websites," or to "the regulations of any number of government agencies and private entities," without specifying a particular source. *Id.* at 2-3. Chattopadhyay also argues that facts 1 and 2 "can be accurately and readily determined by going on any online bank's website." *Id.* at 2. However, the Court has "reject[ed] the notion that a document is judicially noticeable simply because it appears on a publicly available website, regardless of who maintains the website or the purpose of the document." *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032 (N.D. Cal. 2018). Moreover, it is difficult to imagine how any single bank's website could establish the practices of all banks aside from Simple, PNC Bank, and Compass Bank. Plaintiffs' requests for judicial notice are denied.

## IV. LEGAL STANDARD

### A. Rule 12(b)(2)

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). But where the "motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). This standard "is not toothless," and "[t]he party asserting jurisdiction cannot simply rest on the bare allegations of its complaint; however, uncontroverted allegations in the complaint must be taken as true." *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019) (internal quotation marks and citation omitted). In addition, "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

### B. Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Dismissal under Federal Rule of Civil Procedure 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). In

determining whether a plaintiff has met this plausibility standard, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## V.   DISCUSSION

### A.   BBVA Defendants

The Court first considers the BBVA Defendants' argument that the complaint fails to include sufficient allegations against them. A "[p]laintiff must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them." *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988). It is not sufficient to "lump[] [defendants] together in a single, broad allegation." *Id.*

That is precisely what Chattopadhyay has done here. The factual allegations against the BBVA Defendants are contained in the following two paragraphs, both of which lump them together with other defendants without specifying any particular acts allegedly done by them:

> 16. Originally, Simple opened accounts for non-citizens. However, when Compass Bank, *or, in the alternative and/or in addition to, BBVA Compass Bancshares, or, in the alternative and/or in addition to, BBVA Compass Financial Corporation*, acquired it in 2017, the companies, acting in tandem, closed all accounts belonging to non-citizens, including permanent residents. Upon merger, the corporations effectively acted as one entity, and a unity of interest existed between the corporations such that any individuality and separation between Simple and Compass Bank have ceased, and Simple is an alter ego of Compass *Bank or, in the alternative and/or in addition to, BBVA Compass Bancshares, or, in the alternative and/or in addition to, BBVA Compass Financial Corporation*: a brand and technological interface through which Compass Bank *or, in the alternative and/or in addition to, BBVA Compass Bancshares, or, in the alternative and/or in addition to, BBVA Compass Financial Corporation* markets a subset of its banking services.
>
> 17. In the alternative, Simple conspired with Compass Bank *or, in the alternative and/or in addition to, BBVA Compass Bancshares, or, in the alternative and/or in addition to, BBVA Compass Financial Corporation*, to deny its services to aliens in that it provided the web interface which automatically rejects non-citizen applicants on the basis of their immigration status, intending that its interface be used to discriminate against residents of California on the basis of their citizenship and immigration status, and further refuses to issue its Simple Visa Card and denies the full use of its Simple iOS and Android applications, as well as the rest of its web

interface, to aliens.

ECF No. 1 ¶¶ 16-17 (emphasis added).  This is insufficient.  *E.g.*, *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) (finding insufficient a complaint that "lumps defendants (and apparently others) together and fails to distinguish adequately claims and alleged wrongs among defendants and others"); *see also Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005) ("The allegations of the complaint regarding both the vicarious liability and conspiracy theories are simply legal conclusions without supporting facts."); *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003) ("Conclusory allegations of 'alter ego' status are insufficient to state a claim.").  Accordingly, the Court will grant the motion to dismiss Chattopadhyay's claims against the BBVA Defendants.  Dismissal will be with leave to amend.

The BBVA Defendants also argue that the Court lacks personal jurisdiction over them.  Chattopadhyay does "not assert general personal jurisdiction over the BBVA defendants" and instead relies on specific jurisdiction.  ECF No. 33 at 2.  Specific jurisdiction requires that the suit arise out of or relate to the defendant's contacts with the forum.  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017).  "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Id.* (internal quotation marks, alteration, and citation omitted).  "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Chattopadhyay alleges that both BBVA Defendants "operat[e] in the State of California under the trade name BBVA Compass, where [they] operate[] substantial business within the state of California, including both an online presence and physical branches." ECF No. 1 ¶¶ 5, 7.  But these allegations are not uncontroverted.  In support of their motion to dismiss, the BBVA Defendants submitted a declaration stating that BBVA Compass Financial Corporation "is an equipment leasing company with its business focus on commercial transactions."  ECF No. 18-1 ¶ 2.  The declaration further states that "Compass Financial Corporation is not a bank.  It has no

7

banking operations and provides no deposit-taking products or services in California or anywhere else." *Id.* ¶ 3. A second declaration states that BBVA Compass Bancshares "is a financial holding company" that "is not involved in the day-to-day operations of its subsidiaries, each of which is independently managed." ECF No. 18-2 ¶ 2. The declaration also states that "Compass Bancshares is not a bank. It has no banking operations and provides no banking products or services in California or anywhere else" and "does not communicate directly with consumers in California." *Id.* ¶¶ 3-4. Given these declarations, the Court cannot assume the bare allegations in the complaint as true. *In re Boon Glob. Ltd.*, 923 F.3d at 650. Moreover, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (finding insufficient allegations that "[defendants] directed communication into the U.S. Western District of Washington and otherwise conducted business therein sufficient to establish minimum contacts within the forum that support the exercise of jurisdiction over their persons by this Court" (alteration in original)). Chattopadhyay has submitted no contrary evidence or pointed to any other allegations of California contacts by the BBVA Defendants, and she has therefore failed to "make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc.*, 647 F.3d at 1223.

Chattopadhyay requests leave to conduct jurisdictional discovery, which Defendants oppose, but neither party cites any authority governing when such discovery should be allowed. Because the complaint fails to allege specific facts as to the BBVA Defendants, the Court does not now decide whether jurisdictional discovery should be allowed. If Chattopadhyay chooses to amend the complaint and successfully states a claim against the BBVA Defendants without also making a prima facie showing of jurisdictional facts, then she may renew her request for jurisdictional discovery. Any such request must consider the relevant standard. *See, e.g.*, *Mission Trading Co. v. Lewis*, No. 16-cv-01110-JST, 2016 WL 6679556, at *5 (N.D. Cal. Nov. 14, 2016).

### B.     42 U.S.C. § 1981

The Court next considers the remaining Defendants' motions to dismiss Chattopadhyay's claim under 42 U.S.C. § 1981. Section 1981 "protects against discrimination on the basis of

alienage" in, among other areas, the making and enforcement of contracts. *Sagana v. Tenorio*, 384 F.3d 731, 738-39 (9th Cir. 2004) (applying rule to "governmental discrimination"); *Anderson v. Conboy*, 156 F.3d 167, 180 (2d Cir. 1998) (holding that § 1981 "provides a claim against private discrimination on the basis of alienage"); *see also* 42 U.S.C. § 1981(c) ("The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."). Defendants argue that Chattopadhyay's § 1981 claim is barred by the Bank Secrecy Act. For the reasons discussed below, the Court disagrees.

Regulations promulgated under the Bank Secrecy Act require banks to "implement a written Customer Identification Program (CIP)" that "must include risk-based procedures for verifying the identity of each customer to the extent reasonable and practicable. The procedures must enable the bank to form a reasonable belief that it knows the true identity of each customer." 31 C.F.R. § 1020.220(a)(1)-(2). The purpose of the Bank Secrecy Act is "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings, or in the conduct of intelligence or counterintelligence activities, including analysis, to protect against international terrorism." 31 U.S.C. § 5311. The regulations cited by Defendants authorize one distinction relevant to citizenship before account opening: Citizens must present a taxpayer identification number before opening an account, whereas non-citizens must present "one or more of the following: A taxpayer identification number; passport number and country of issuance; alien identification card number; or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard." 31 C.F.R. § 1020.220(a)(2)(i)(A)(4)(i)-(ii). In addition, the regulations provide that a CIP "must describe when the bank will use documents, non-documentary methods, or a combination of both methods" to "verify[] the identity of the customer . . . within a reasonable time after the account is opened." 31 C.F.R. § 1020.220(a)(2)(ii). "[N]on-documentary procedures must address situations where . . . the bank is not familiar with the documents presented," 31 C.F.R. § 1020.220(a)(2)(ii)(B)(2), which Defendants argue is a further distinction based on citizenship because banks are more likely to be unfamiliar with documents from another country.

Defendants correctly observe that between the Bank Secrecy Act and § 1981, the Bank Secrecy Act is the more specific statute and § 1981 the more general. Defendants are also correct that one of the canons of statutory construction is that "a specific statute governs a general one." *U.S. v. 103 Elec. Gambling Devices*, 223 F.3d 1091, 1102 (9th Cir. 2000). As the Supreme Court has explained:

> The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one. But the canon has full application as well to statutes . . . in which a general authorization and a more limited, specific authorization exist side-by-side. There the canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one, "violat[ing] the cardinal rule that, if possible, effect shall be given to every clause and part of a statute." The terms of the specific authorization must be complied with.

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (second alteration in original) (citations omitted). Defendants argue that, as applied to this case, the specific provisions of the Bank Secrecy Act that allow some disparate treatment based on citizenship must be construed as an exception to § 1981's general prohibition of alienage discrimination. This is true as far as it goes, but Defendants have pointed to nothing in the Bank Secrecy Act or its implementing regulations that authorizes wholesale discrimination against non-citizens, particularly against the resident non-citizens in the putative class who, by definition, have a Social Security number – i.e., the same taxpayer identification number that U.S. citizens are required to present.[2]

Defendants are incorrect when they assert that it "misses the point" that "Plaintiffs may argue that nothing in the Bank Secrecy Act *requires* a financial institution to automatically decline to open accounts for non-citizens." ECF No. 19 at 16 (emphasis in original). To the contrary, another "entrenched canon[] of statutory construction" is that, where possible, "courts should give effect to both of two statutes covering related or overlapping subjects." *103 Elec. Gambling Devices*, 223 F.3d at 1103. "[C]ourts are not at liberty to pick and choose among congressional

---

[2] Because the putative class consists only of resident non-citizens who have Social Security numbers, the Court limits its analysis to this group. *See* ECF No. 1 ¶ 21 (defining putative class).

10

enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). While Bank Secrecy Act regulations allow financial institutions to draw some limited distinctions in the way citizens and non-citizens are treated – for example, in the identification number that applicants must present prior to opening an account, 31 C.F.R. § 1020.220(a)(2)(i)(A)(4) – Defendants have pointed to nothing that clearly expresses a congressional intent to allow financial institutions to categorically bar non-citizens from opening bank accounts, or to allow an institution to treat citizens and resident non-citizens with Social Security numbers differently. The Court therefore reads the CIP requirements relied on by Defendants and § 1981 as being capable of co-existence. Based on the record now before it, the Court is not persuaded that Congress intended the Bank Secrecy Act to remove the protections of § 1981 and allow financial institutions to engage in wholesale discrimination against non-citizens.[3]

Chattopadhyay has stated a plausible claim under 42 U.S.C. § 1981.

### C.     Unruh Civil Rights Act

Finally, the Court considers Defendants' motion to dismiss Chattopadhyay's claim under California's Unruh Civil Rights Act. The Act provides that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b). The Act was "intended as an active measure that would create and

---

[3] Defendants' reliance on three cases involving a federal regulation concerning air safety is misplaced. Under 49 U.S.C. § 44902(b), "an air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety." The cases relied on by Defendants all arose at summary judgment, not at the motion to dismiss stage. *Al-Watan v. Am. Airlines, Inc.*, 658 F. Supp. 2d 816, 817 (E.D. Mich. 2009); *Dasrath v. Cont'l Airlines, Inc.*, 467 F. Supp. 2d 431, 433 (D.N.J. 2006); *Al-Qudhai'een v. Am. W. Airlines, Inc.*, 267 F. Supp. 2d 841, 843 (S.D. Ohio 2003). Moreover, in none of those cases was the defendant alleged to have placed a blanket ban on any single category of passengers and, instead, concerned individualized inquiries – precisely what Chattopadhyay alleges was absent here. *Al-Watan*, 658 F. Supp. 2d at 827-29; *Dasrath*, 467 F. Supp. 2d at 445-49; *Al-Qudhai'een*, 267 F. Supp. 2d at 847-48.

1   preserve a nondiscriminatory environment in California business establishments by banishing or
2   eradicating arbitrary, invidious discrimination by such establishments. *Angelucci v. Century*
3   *Supper Club*, 41 Cal. 4th 160, 167 (2007) (internal quotation marks and citations omitted). For
4   example, the Act prohibits discriminatory acts that "emphasize[] irrelevant differences" or
5   "perpetuate . . . stereotypes." *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 35-36 (1985).

6   Defendants move to dismiss Chattopadhyay's Unruh Act claim on grounds that the alleged
7   discrimination is not arbitrary or invidious because it is based on the Bank Secrecy Act's
8   assessment that "non-citizens can pose a higher risk than citizens." ECF No. 19 at 25. "Not only
9   is it reasonable for Defendants to take all possible precautions to protect the health and safety of
10  the nation," Defendants argue, "but it is also reasonable for Defendants to ensure they will not face
11  the severe penalties available under the Bank Secrecy Act if their AML [Anti-Money
12  Laundering]/CIP policies are found to be inadequate." *Id.* at 24.

13  Defendants' argument might be persuasive if the Court agreed that the Bank Secrecy Act
14  required a ban on opening bank accounts for resident non-citizens with Social Security numbers,
15  or allowed a financial institution to adopt such a ban notwithstanding federal antidiscrimination
16  provisions. However, as discussed above, the Court does not reach this conclusion. It therefore
17  also does not find dismissal of Chattopadhyay's Unruh Act claim to be appropriate. At this stage
18  of the proceedings, Defendants have not persuaded the Court that distinguishing between citizens
19  and resident non-citizens who have Social Security numbers, by barring the latter group from
20  applying to open bank accounts, is reasonable and non-arbitrary.

21                                      **CONCLUSION**

22  Defendants' motions to dismiss are granted in part and denied in part. The motions are
23  granted as to the BBVA Defendants, who are dismissed from this case with leave to amend.
24  Chattopadhyay may file an amended complaint within fourteen days of the date of this order.
25  / / /
26  / / /
27  / / /
28  / / /

United States District Court
Northern District of California

Failure to do so will result in dismissal of the BBVA Defendants with prejudice.  In all other respects, the motions are denied.

**IT IS SO ORDERED.**

Dated:  November 25, 2019

_____
JON S. TIGAR
United States District Judge