1  Stuart M. Richter (CA 126231)
   stuart.richter@katten.com
2  Gregory S. Korman (CA 216931)
   greg.korman@katten.com
3  Andrew J. Demko (CA 247320)
   andrew.demko@katten.com
4  **KATTEN MUCHIN ROSENMAN LLP**
5  2029 Century Park East
   Los Angeles, CA 90067-3012
6  Telephone:    310.788.4400
   Facsimile:    310.788.4471
7
8  Attorneys for Defendants

9

10                  **UNITED STATES DISTRICT COURT**

11                 **NORTHERN DISTRICT OF CALIFORNIA**

12                      **(OAKLAND COURTHOUSE)**

13

14  AMITABHO CHATTOPADHYAY and          Case No. 4:19-cv-01541-JST
    VITALII TYMCHYSHYN, individually and
    on behalf of all others similarly situated,   The Honorable Jon S. Tigar
15
                   Plaintiffs,            **DEFENDANT BBVA USA F/K/A**
16                                        **COMPASS BANK'S REPLY IN SUPPORT**
                                          **OF MOTION TO DISMISS SECOND**
17     v.                                 **AMENDED COMPLAINT PURSUANT**
                                          **TO RULES 12(b)(1) AND 12(b)(6)**
18  SIMPLE FINANCE TECHNOLOGY
    CORP. and BBVA USA, F/K/A COMPASS
19  BANK,                                 SAC Filed: June 2, 2020
20                 Defendants.
                                          Date:          August 12, 2020
21                                        Time:          2:00 p.m.
                                          Place:         Courtroom 6
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     SUMMARY OF REPLY ....................................................................................................1

II.    PLAINTIFFS DO NOT HAVE ARTICLE III STANDING BECAUSE THEY
       DID NOT SUFFER ANY INJURY CAUSED BY BBVA .................................................2

     A.     Plaintiffs Were Tester Plaintiffs Who Were Not Denied the Right to
              Contract ...............................................................................................................2

     B.     Plaintiffs Broke Any Causal Chain BBVA May Have Been Part of by
              Causing Their Own Injury ....................................................................................4

     C.     Plaintiffs Lack Standing to Seek Injunctive and Declaratory Relief Because
              They Fail to Show that They Are At Risk of Future Harm. ...................................5

III.   PLAINTIFFS' SECTION 1981 AND UNRUH ACT CLAIMS FAIL .............................6

     A.     The Law of the Case Doctrine Does Not Apply to Plaintiffs' New Claims
              about BBVA's Onboarding of BBVA Customers ...................................................6

     B.     BBVA Did Not Violate Section 1981 Because It Complied with the Bank
              Secrecy Act, the More Specific Statute .................................................................8

     C.     Alternatively, BBVA's In-Person Approach Accommodates Both the Bank
              Secrecy Act and Section 1981; Plaintiffs' Approach Renders the Bank
              Secrecy Act a Nullity ...........................................................................................9

     D.     Plaintiffs' Section 1981 Claim Fails for Lack of But-For Causation and
              Because Plaintiffs Were Not Blocked from Opening an Account .........................10

     E.     Plaintiffs' Unruh Act Claim Fails as a Matter of Law Because Combatting
              Terrorist Financing Is a Compelling Social Policy and Attempting to
              Comply with the Bank Secrecy Act Is Not Arbitrary ...........................................12

     F.     Plaintiffs' Claims Fail as a Matter of Law for Lack of Discriminatory
              Intent ...................................................................................................................14

IV.    CONCLUSION.............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alsheikh v. Lew*,
  No. 15-03601, 2016 WL 1394338 (N.D. Cal. Apr. 7, 2016) .......................................................3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................................14, 15

*Askins v. U.S. Dep't of Homeland Sec.*,
  899 F.3d 1035 (9th Cir. 2018) .....................................................................................................7

*Bagley v. Ameritech Corp.*,
  220 F.3d 518 (7th Cir. 2000) .....................................................................................................11

*Bastidas v. Good Samaritan Hosp. LP*,
  774 F. App'x 361 (9th Cir. 2019) ..............................................................................................14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................................14

*Bonner v. Rite Aid Corp.*,
  No. 19–674, 2020 WL 801897 (E.D. Cal. Feb. 18, 2020) .........................................................11

*California Pac. Bank v. Fed. Deposit Ins. Corp.*,
  885 F.3d 560 (9th Cir. 2018) .......................................................................................................9

*Chase v. Dep't of Pub. Safety & Corr. Servs.*,
  No. 18–2182, 2020 WL 1914811 (D. Md. Apr. 20, 2020) ..........................................................7

*Childs v. Boyd Gaming Corp.*,
  No. 18–316, 2018 WL 4333945 (D. Nev. Sept. 11, 2018) ...................................................11, 12

*City of Oakland v. Wells Fargo Bank, N.A.*,
  No. 15-4321, 2018 WL 3008538 (N.D. Cal. June 15, 2018), *motion to certify
  appeal granted*, No. 15-04321, 2018 WL 7575537 (N.D. Cal. Sept. 5, 2018) ...........................7

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
  140 S. Ct. 1009 (2020) ...............................................................................................................11

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) .......................................................................................................6

*DePolo v. Ciraolo-Klepper*,
  197 F. Supp. 3d 186 (D.D.C. 2016), *aff'd*, No. 16-5308, 2017 WL 4231143
  (D.C. Cir. June 15, 2017) .............................................................................................................5

*Duke Power Co. v. Carolino Envtl. Study Grp.*,
   438 U.S. 59 (1978) .................................................................................................5

*Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*,
   28 F.3d 1268 (D.C. Cir. 1994) ................................................................................3

*Finkelman v. Nat'l Football League*,
   810 F.3d 187 (3d Cir. 2016) ....................................................................................5

*Gomez v. Alexian Bros. Hosp. of San Jose*,
   698 F.2d 1019 (9th Cir. 1983) .................................................................................3

*Gregory v. Dillard's, Inc.*,
   565 F.3d 464 (8th Cir. 2009) ............................................................................11, 12

*Kinnon v. Arcoub, Gopman & Assocs., Inc.*,
   490 F.3d 886 (11th Cir. 2007) ...............................................................................12

*Koebke v. Bernardo Heights Country Club*,
   36 Cal. 4th 824 (2005) ...........................................................................................15

*Koire v. Metro Car Wash*,
   40 Cal. 3d 24 (1985) ...............................................................................................12

*Kyles v. J.K. Guardian Sec. Servs., Inc.*,
   222 F.3d 289 (7th Cir. 2000) ................................................................................3, 4

*Levay v. AARP, Inc.*,
   No. 17-09041, 2018 WL 3425014 (C.D. Cal. July 12, 2018) ..................................6

*Lindsey v. SLT Los Angeles, LLC*,
   447 F.3d 1138 (9th Cir. 2006) ...............................................................................11

*Lopez v. Target Corp.*,
   676 F.3d 1230 (11th Cir. 2012) .............................................................................12

*Lowe v. City of Monrovia*,
   775 F.2d 998 (9th Cir. 1985), *amended*, 784 F.2d 1407 (9th Cir. 1986) ...............15

*Makaryan v. Volkswagen Grp. of Am., Inc.*,
   No. 17-5086, 2017 WL 6888254 (C.D. Cal. Oct. 13, 2017) .................................4, 5

*Marina Point, Ltd. v. Wolfson*,
   30 Cal. 3d 721 (1982) .............................................................................................14

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) .................................................................................5

*Mendia v. Garcia*,
   768 F.3d 1009 (9th Cir. 2014) ..............................................................................4, 5

*Morton v. Mancari,*
    417 U.S. 535 (1974) .................................................................................10

*Nat'l Audubon Soc'y, Inc. v. Davis,*
    307 F.3d 835 (9th Cir. 2002) ......................................................................5

*Opperman v. Path, Inc.,*
    84 F. Supp. 3d 962 (N.D. Cal. 2015) (Tigar, J.) ........................................6

*Phiffer v. Proud Parrot Motor Hotel, Inc.,*
    648 F.2d 548 (9th Cir. 1980) ......................................................................5

*Razuki v. Nationstar Mortg., LLC,*
    No. 18-03343, 2020 WL 1478374 (N.D. Cal. Mar. 26, 2020) ..................4

*Sargoy v. Resolution Tr. Corp.,*
    8 Cal. App. 4th 1039 (1992) .....................................................................12

*Serena v. Mock,*
    No. 06-1262, 2006 WL 2237735 (E.D. Cal. Aug. 4, 2006).......................3

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ...............................................................................2

*Strigliabotti v. Franklin Res., Inc.,*
    398 F. Supp. 2d 1094 (N.D. Cal. 2005) .....................................................8

*U.S. v. 103 Elec. Gambling Devices,*
    223 F.3d 1091 (9th Cir. 2000) ..................................................................10

**Statutes**

31 U.S.C. § 5311 et seq...........................................................................*passim*

31 U.S.C. § 5318(i)(1),(3)............................................................................10

42 U.S.C. § 1981 ....................................................................................*passim*

Cal. Civ. Code §§ 51, 52..........................................................................*passim*

**Rules**

Rule 12(b)(6)...............................................................................................8

**Regulations**

12 C.F.R. § 1010.100 ..................................................................................14

12 C.F.R. § 1020.220(a)(2)(i) ....................................................................14

31 C.F.R. § 1020.22 ...................................................................................10

31 C.F.R. § 1020.220(a)(1) ...........................................................................................8

31 C.F.R. § 1020.220(a)(2) .....................................................................................8, 10

**Other Authorities**

*Bank Secrecy Act/Anti-Money Laundering Examination Manual*, Fed. Fin.
    Institutions Examination Council, https://bit.ly/2Wj96Mi (last visited June 13,
    2020) ....................................................................................................................9

*Bank Secrecy Act/Anti-Money Laundering Examination Manual*, Fed. Fin.
    Institutions Examination Council, https://bit.ly/2Zupdsp (last visited June 13,
    2020) ....................................................................................................................9

Merriam-Webster Online Dictionary, https://bit.ly/3jbDRga ......................................13

## I.     SUMMARY OF REPLY

Plaintiffs' opposition is built on a mischaracterization of their own claims against BBVA USA. They contend that because the Court denied the prior motion to dismiss directed at how the *other* defendant, Simple, onboards its customers, the law of the case doctrine somehow applies to their new claims that now target how BBVA—not Simple—onboards *its* customers. Plaintiffs are mistaken. This motion deals exclusively with the new claims, added for the first time in the amended complaint, about the onboarding process for BBVA's customers. Manifestly, the law of the case doctrine cannot apply to claims that did not exist at the time of the first motion. Nor does the Court's view of Simple's onboarding process control the outcome of this motion, because those processes are materially different. While they both have the same end—identification of new customers—BBVA is able to use its branches to verify the identity of new customers face-to-face, in person; Simple is not. Plaintiffs' law-of-the-case argument is a weak crutch that should be discarded and the motion granted for the following reasons.

*First*, Plaintiffs lack Article III standing because they suffered no injury caused by BBVA. Plaintiffs claim they were unable to open accounts *online* with BBVA, but that is not being denied the right to *contract*. Plaintiffs were never refused an account at BBVA, they were just asked to visit a branch to open their account. They elected not to do so, inflicting their own purported injury. At most, Plaintiffs allege they could not use the account opening channel they preferred. They point to no law, however, supporting the proposition that the mere loss of such a preference confers standing. Also, they lack standing to seek injunctive or other prospective relief because they have no intention of attempting to open an account with BBVA in the future.

*Second*, no one disputes that the Bank Secrecy Act is the more specific statute and Section 1981 the more general. BBVA has shown that Plaintiffs' interpretation of Section 1981 restricts—indeed, it actually imposes liability on—BBVA's efforts to comply with the more specific statute. The Bank Secrecy Act therefore displaces Section 1981. Alternatively, BBVA's solution of opening accounts in person at the branch allows both statutes to coexist. It gives effect to the Bank Secrecy Act's requirement that BBVA know the identity of its customers by allowing a banker to look at a new customer face-to-face and review original identification documents in

person; and it gives effect to Section 1981's requirement that no one be denied the ability to make a contract by allowing non-U.S. persons to open accounts in the branch. Plaintiffs' approach, in contrast, simply nullifies the Bank Secrecy Act.

*Third*, neither BBVA nor Plaintiffs' citizenship were the but-for cause why Plaintiffs did not open an account with BBVA—that was *Plaintiffs'* own decision not to visit a branch to apply in person. Further, BBVA did not actually prevent or block Plaintiffs from opening a bank account, as Section 1981 requires. Instead, Plaintiffs rejected BBVA's invitation to open an account in a branch.

*Fourth*, Plaintiffs' Unruh Act claim fails because such a claim requires intentional discrimination that is arbitrary and not for a compelling social reason. Those requirements are not met here. Obviously, a bank's efforts to comply with the Bank Secrecy Act and its implementing regulations are far from arbitrary. Equally obvious, national security, terrorism prevention, and prevention of financial crimes are all compelling social policies advanced by compliance with the Bank Secrecy Act. Even if the Plaintiffs or the Court believe BBVA's efforts to comply to be imperfect, that still would not come close to meeting the required standard of *arbitrariness*. Plaintiffs' Unruh Act claim is a serious allegation of discrimination that has no support.

*Finally*, there is no plausible basis to conclude that BBVA's in-branch account opening solution is in place for any reason other than its attempt to comply with the Bank Secrecy Act. Thus, the discriminatory intent required for Section 1981 and Unruh Act claims is absent here.

For these reasons, the Court should grant BBVA's motion to dismiss.

## II.   PLAINTIFFS DO NOT HAVE ARTICLE III STANDING BECAUSE THEY DID NOT SUFFER ANY INJURY CAUSED BY BBVA

### A.   Plaintiffs Were Tester Plaintiffs Who Were Not Denied the Right to Contract

Plaintiffs have not suffered an injury-in-fact because they were not refused the right to contract with BBVA. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (for Article III standing, injury "must actually exist"). Plaintiffs were not actually denied bank accounts; they were invited to complete their applications at a branch. Because Plaintiffs cannot and do not allege that BBVA refused to open accounts to them, there is no injury-in-fact.

Plaintiffs counter that their "injury" was not the inability to open an account—*i.e.*, the right to contract—but the inability to use the application channel they preferred. Opp. at 7. Yet Plaintiffs tellingly point to no law or authority suggesting they have a legally protected interest in opening an account with a new bank online rather than in person.[1] At best, Plaintiffs complain they were deprived of a *convenience* or *preference*. But they were not denied the right to *contract*, which is what the law protects. Thus, Plaintiffs suffered no Article III injury.[2]

Additionally, Plaintiffs have no Section 1981 injury because they are tester plaintiffs. "The class of persons who may bring [a Section 1981 claim] is [] limited to persons who actually wish to enter into (or remain in) [the contractual] relationship." *Kyles v. J.K. Guardian Sec. Servs.*, *Inc.*, 222 F.3d 289, 303 (7th Cir. 2000). Tester plaintiffs are not "genuinely interested" in entering the contracts at issue and thus have not suffered any injury from the purportedly discriminatory practice. *Id.* at 302–03; *Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1271 (D.C. Cir. 1994). Plaintiffs do not dispute the rule that tester plaintiffs lack Article III standing to assert a Section 1981 claim. They just argue they are not testers because they were "interested in opening online checking accounts with BBVA" and "did in fact apply." Opp. at 8. Their own phrasing unconsciously proves the point: they were not interested in *becoming BBVA customers* (amid their ongoing litigation with BBVA), they were interested in *opening online checking accounts* (the subject matter of their ongoing litigation with BBVA). Their attempts to apply online were not bona fide attempts to bank, they were tactical efforts to develop more grist for their litigation mill.

Plaintiffs' motivation for applying is dispositive. *Kyles*, 222 F.3d at 303 (plaintiffs must

---

[1] The cases cited by Plaintiffs are distinguishable because the plaintiffs in those cases were denied actual tangible rights, such as being awarded a contract, *Gomez v. Alexian Bros. Hosp. of San Jose*, 698 F.2d 1019, 1021 (9th Cir. 1983), or being allowed to participate in a grand jury, *Serena v. Mock*, No. 06-1262, 2006 WL 2237735, at *3-4 (E.D. Cal. Aug. 4, 2006). Plaintiffs here do not complain they were denied the right to open a bank account, because they were not.

[2] Plaintiffs argue *Alsheikh* is distinguishable because, unlike the plaintiff in that case, they supposedly were denied BBVA bank accounts. *See* Opp. at 7 (citing *Alsheikh v. Lew*, No. 15-03601, 2016 WL 1394338 (N.D. Cal. Apr. 7, 2016)). But as already explained above, that is not true. And while the court in *Alsheikh* was focused on the "particularized" element of injury-in-fact, it found the plaintiff had "not identified any particular *injury* that he ha[d] suffered[,]" because, among other reasons, "[p]laintiff [did] not allege that he has had any application for an account denied or any account closed." *Id.* at *2 (emphasis added). Thus, *Alsheikh* is germane.

"actually wish" to enter or be "genuinely interested" in the contractual relationship). And their motivation is not a close question. Even their opposition is half-hearted. They never address the timing of their online applications; they never explain why they did not visit a BBVA branch; and they certainly don't explain why, with fourteen bank accounts between them, they were each "genuinely interested" in opening another one from BBVA.[3] There is no rational explanation other than the obvious and inescapable one: they did it for this litigation. Thus, Plaintiffs were not injured and have not satisfied the injury-in-fact requirement for Article III standing.

## B. Plaintiffs Broke Any Causal Chain BBVA May Have Been Part of by Causing Their Own Injury

Plaintiffs also fail to meet the causation requirement for Article III standing because their inability to open a bank account with BBVA was self-inflicted. BBVA invited them to open accounts at a branch, but—hand-in-glove with their status as tester plaintiffs—*they just chose not to*. There are no allegations that BBVA blocked them from doing so, and the actual evidence (which Plaintiffs do not even address, much less refute) shows that opening accounts in the branch is a more than viable method of initiating a banking relationship, as non U.S. persons open 12% of deposit accounts in BBVA branches in the Bay Area. Hager Decl. ¶ 3.

Plaintiffs argue "[c]ausation may be found even if there are multiple links in the chain connecting the defendant's unlawful conduct to the plaintiff's injury," *Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014), but the number of links in the chain is immaterial. What matters is what Plaintiffs did to break that chain, whether it had one link or twenty. And Plaintiffs broke that chain when they decided not to visit a branch. As here, when "an injury is self-inflicted or

---

[3] Plaintiffs argue that because "BBVA only has branches in seven of the fifty states in the United States, [] many putative class members only have the online option available." Opp. at 8. At this stage, that supposition is irrelevant; only Plaintiffs' experience matters. *See, e.g.*, *Makaryan v. Volkswagen Grp. of Am., Inc.*, No. 17-5086, 2017 WL 6888254, at *4 (C.D. Cal. Oct. 13, 2017) ("In a class action, the lead plaintiffs must show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (quotation marks and citation omitted); *Razuki v. Nationstar Mortg., LLC*, No. 18-03343, 2020 WL 1478374, at *3 (N.D. Cal. Mar. 26, 2020) (for Article III standing, "a named plaintiff must possess the requisite standing; it is not sufficient that a putative class member may have standing to press one of the claims"). There are multiple BBVA branches Plaintiffs could have visited in the Bay Area that open accounts for non-U.S. persons all the time. Hager Decl. ¶ 2.

due to the plaintiff's own fault, the causal chain is broken and standing will not be established." *Makaryan*, 2017 WL 6888254 at *6 (quotation marks and citation omitted); *see also Mendia*, 768 F.3d at 1013 n.1; *DePolo v. Ciraolo-Klepper*, 197 F. Supp. 3d 186, 191 (D.D.C. 2016), *aff'd*, No. 16-5308, 2017 WL 4231143 (D.C. Cir. June 15, 2017) ("a self-inflicted injury [] sever[s] the cause nexus needed to establish standing") (alterations in original) (quotation marks and citation omitted).

The two cases Plaintiffs cite are distinguishable for this reason, because neither involved a plaintiff whose injury was self-inflicted. *See* Opp. at 10 (citing *Maya v. Centex Corp*., 658 F.3d 1060, 1070 (9th Cir. 2011); *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002)). The court in *Maya* focused on the strength of the causal chain, and there was no assertion by the defendants that the plaintiffs had any involvement in causing their own injuries. *See* 658 F.3d at 1070. And the court in *National Audubon Society* was not concerned with whether the causal chain was broken due to the plaintiff's own actions, but with the length of the causal chain. *See* 307 F.3d at 849.

Here, the inquiry is different—whether Plaintiffs broke the causal chain. And it is clear they did, when they voluntarily and intentionally opted not to visit a BBVA branch and open an account and to sue instead. That decision was their own, not BBVA's. Accordingly, Plaintiffs have not established causation for Article III standing.[4]

## C. Plaintiffs Lack Standing to Seek Injunctive and Declaratory Relief Because They Fail to Show that They Are At Risk of Future Harm.

Plaintiffs separately lack standing to seek injunctive and declaratory relief because they do

---

[4] Plaintiffs claim that BBVA misstated the relevant causation standard as being proximate cause. Opp. at 9-10 (arguing that "Plaintiffs are not required to demonstrate that defendants' actions are the 'proximate cause' of Plaintiffs' injuries"). Actually though, BBVA applied the correct but-for standard. Plaintiffs conflate the two but they are not the same. A plaintiff need not allege that the defendant is the proximate cause of their injury, but but-for causation is still necessary. *See Phiffer v. Proud Parrot Motor Hotel, Inc*., 648 F.2d 548, 552 (9th Cir. 1980) ("Nevertheless, the record indicates that she has fully established the injury-in-fact and 'but for' causation required under the current interpretation of the Article III case-or-controversy requirement.") (citing *Duke Power Co. v. Carolino Envtl. Study Grp.*, 438 U.S. 59, 72-82 (1978)); *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) ("The second element of Article III standing is causation . . . This requirement is 'akin to but for causation' in tort and may be satisfied 'even where the conduct in question might not have been a proximate cause of the harm.'") (citation omitted). By breaking the causal chain, Plaintiffs met neither standard.

not state that they intend to apply for an account again. They do not dispute having no such intent. They argue instead that they have standing because "BBVA's challenged online policy is ongoing." Opp. at 9. For standing that does not move the needle. Plaintiffs still need to show that *they* "may suffer an actual and imminent, not conjectural or hypothetical threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) (quotation marks and citation omitted). And with no plan to apply for an account again, Plaintiffs will not suffer their purported injury again.

This is akin to those cases in which "a previously deceived consumer . . . [who] now knows or suspects that the advertising" at issue was false at the time of the original purchase seeks injunctive relief. *Id*. In such cases, a plaintiff must at least allege "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or that "she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 970. The same goes for Plaintiffs; they "must allege at least a willingness to consider [opening a BBVA account online] in the future." *Opperman v. Path, Inc*., 84 F. Supp. 3d 962, 988 (N.D. Cal. 2015) (Tigar, J.); *Levay v. AARP, Inc*., No. 17-09041, 2018 WL 3425014, at *3 (C.D. Cal. July 12, 2018) ("Plaintiffs do not indicate that they intend to purchase AARP-branded policies from New York Life, such that there might exist a 'credible threat of real and immediate harm.'") (citation omitted). Since they have not done so, they lack Article III standing to seek injunctive and declaratory relief.

## III.   PLAINTIFFS' SECTION 1981 AND UNRUH ACT CLAIMS FAIL

### A.   The Law of the Case Doctrine Does Not Apply to Plaintiffs' New Claims about BBVA's Onboarding of BBVA Customers

Though Plaintiffs attempt to paint them with the same brush, BBVA and Simple are not the same. BBVA is a traditional bank with branches in the Bay Area and elsewhere throughout the United States. Simple is an online-only financial institution with no branches. BBVA and Simple are necessarily going to have different customer onboarding methods because the Bank Secrecy Act requires *each* financial institution to perform its *own* identity-verification risk assessment, taking into account the specifics of its business, and from that mandatory self-

assessment to craft its own CIP policy. Their *policies* are identical: follow the BSA's requirement to reasonably know the identity of a new customer. But for online applicants, the material differences in their businesses means they implement that policy in different ways. Simple, when faced with an applicant whose identity it could not adequately verify online, had no choice but to decline to open the account, because Simple has no branches. BBVA, on the other hand, when faced with the exact same identity-verification risk, is able to mitigate it by allowing non-U.S. persons to open accounts *in person*, because BBVA has branches.

Though Plaintiffs mischaracterize their own claims as being the same from one pleading to the next, that is simply false. The last motion, and the prior version of the complaint, was exclusively about the onboarding process of *Simple's* customers. Now Plaintiffs added these *new* claims about BBVA's onboarding of *BBVA* customers. How BBVA's customers onboard became part of this action only after Plaintiffs filed an amended complaint, so the Court could not possibly have decided it on the prior motion to dismiss the prior complaint. Therefore, the law of the case, upon which Plaintiffs so heavily rely, is inapplicable. *See, e.g.*, *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1038 (9th Cir. 2018) ("We conclude that it was error to apply the law of the case doctrine on a motion to dismiss an amended complaint."); *City of Oakland v. Wells Fargo Bank, N.A.*, No. 15-4321, 2018 WL 3008538, at *12 (N.D. Cal. June 15, 2018), *motion to certify appeal granted*, No. 15-04321, 2018 WL 7575537 (N.D. Cal. Sept. 5, 2018) (rejecting plaintiff's argument that the "law of the case doctrine bars reconsideration of the [defendant's] argument, because the Court had previously determined that [plaintiff] stated a disparate-impact claim in its initial Complaint" because the amended complaint "substantially revised the initial Complaint's disparate-impact allegations"); *Chase v. Dep't of Pub. Safety & Corr. Servs.*, No. 18–2182, 2020 WL 1914811, at *12 (D. Md. Apr. 20, 2020) (declining to apply law of the case on defendant's motion to dismiss despite plaintiffs' contention that "'this Court has already concluded that Defendant Hussein's attacks on a less detailed version of the Amended Complaint did not merit dismissal pursuant to Rule 12(b)(6)'" because, among other reasons, "the

1    doctrine does not apply where the factual milieu has expanded since the court's initial ruling").[5]

2          Plaintiffs' law-of-the-case argument is a misleading tactic to divert attention from the

3    substantively deficient claims against BBVA. Those claims should be dismissed for the following

4    reasons.

5          **B.      BBVA Did Not Violate Section 1981 Because It Complied with the
                      Bank Secrecy Act, the More Specific Statute**

6

7          Plaintiffs do not dispute that the Bank Secrecy Act is the more specific statute when

8    compared to Section 1981. Nor do they dispute that whenever two federal statutes regulate the

9    same conduct, the more specific one governs. Their opposition essentially boils down to arguing

10   that "there is nothing in the [Bank Secrecy Act's] CIP that prohibits non-U.S. citizens from

11   opening online accounts[.]" Opp. at 15. Plaintiffs are mistaken. The Bank Secrecy Act and its

12   implementing regulations do require BBVA to do what it does, because they require BBVA to

13   develop a CIP policy based on *its* "assessment of the relevant risks" for *its* "size and type of

14   business." 31 C.F.R. §§ 1020.220(a)(1) & (2). Despite what Plaintiffs suggest, this policy cannot

15   be based on Plaintiffs', the Court's, or even Simple's risk assessment of BBVA's business. That

16   is why the Court's order as to Simple's onboarding process and the onboarding processes of the

17   dozen-plus other banks where Plaintiffs opened accounts do not bear on this analysis. The onus is

18   squarely and exclusively on BBVA to craft its own CIP policy—*and to follow it.*

19         Among the risks BBVA was required to consider in developing this policy were the risks

20   presented by "the various methods of opening accounts provided by [BBVA]" and "the various

21   types of identifying information available[.]" 31 C.F.R. § 1020.220(a)(2). Additionally, the

22   Federal Financial Institutions Examination Council ("FFIEC") cautions in its BSA/AML

23   examination manual that "accounts that are opened without face-to-face contact may be a higher

24   risk for money laundering and terrorist financing" because, among other reasons, it is "[m]ore

25   difficult to positively verify the individual's identity," the "[c]ustomer may be out of the bank's

26         [5] Plaintiffs' reliance on *Strigliabotti v. Franklin Res., Inc.*, 398 F. Supp. 2d 1094 (N.D. Cal.

27   2005) is misplaced. In that case, the court applied the law of the case doctrine to a motion for
     judgment on the pleadings brought after the defendants' motion to dismiss pursuant to Rule

28   12(b)(6) had previously been denied. *Id.* at 1098. The parties had not changed, the allegations
     challenged by the two motions were the same, and the court noted no other changed
     circumstances justifying departure from its previous holding. *Id.*

1    targeted geographic area or country," and the account "[m]ay be used by a 'front' company or

2    unknown third party."[6] The FFIEC further singles out non-U.S. persons, directing that "[t]he

3    bank's CIP should detail the identification requirements for opening an account for a non-U.S.

4    person, including an NRA."[7] This is exactly what BBVA did, because that is exactly what federal

5    law requires. BBVA looked at its business (which has in-person account opening available),

6    assessed the identity-verification risks associated with non-U.S. persons, who are not current

7    BBVA customers, who seek to open accounts online, and determined how to mitigate those risks

8    with face-to-face account openings. Plaintiffs cannot argue otherwise; once again, it is BBVA's

9    assessment that matters.

10          So when Plaintiffs say nothing in the Bank Secrecy Act requires BBVA to do what it

11    does, they are superficially misstating the facts and law. The Bank Secrecy Act absolutely does

12    require BBVA to do exactly what it does, because based on BBVA's self-assessment, that is what

13    is required for BBVA to know the identity of its customers. And once BBVA made that

14    determination, if BBVA did something less, then BBVA would be violating the Bank Secrecy

15    Act. Any general law that prevents or interferes with BBVA's ability to do what it specifically

16    has to under the Bank Secrecy Act is displaced by the Bank Secrecy Act. Here, that means

17    Plaintiffs' Section 1981 claim fails as a matter of law.

18          **C.    Alternatively, BBVA's In-Person Approach Accommodates Both
             the Bank Secrecy Act and Section 1981; Plaintiffs' Approach
19           Renders the Bank Secrecy Act a Nullity**

20          As explained in BBVA's moving papers, "when two statutes are capable of co-existence,

21    it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to

22

---

23    [6] Request for Judicial Notice ("RJN"), Ex. 1 (*Bank Secrecy Act/Anti-Money Laundering
      Examination Manual*, Fed. Fin. Institutions Examination Council, https://bit.ly/2Zupdsp (last
24    visited June 13, 2020)). In their opposition, Plaintiffs announce without any authority that the
      BSA/AML examination manual "does not have the force of regulation." Opp. at 3. In truth,
25    however, the manual "is a uniformly recognized authority on BSA policies, procedures, and
      processes." *California Pac. Bank v. Fed. Deposit Ins. Corp.*, 885 F.3d 560, 574 (9th Cir. 2018)
26    (quotation marks and citation omitted); *see also id.* ("We must thus defer to the FFIEC Manual
      unless it is 'plainly erroneous or inconsistent' with the FDIC's four pillars regulation, or unless
27    'an alternative reading is compelled by the regulation's plain language.'") (citation omitted).

28    [7] RJN, Ex. 2 (*Bank Secrecy Act/Anti-Money Laundering Examination Manual*, Fed. Fin.
      Institutions Examination Council, https://bit.ly/2Wj96Mi (last visited June 13, 2020)).

9

1  regard each as effective" and "give effect to both if possible." *Morton v. Mancari*, 417 U.S. 535,

2  550 (1974). While BBVA believes there is an actual conflict, the result is the same—dismissal of

3  Plaintiffs' Section 1981 claim—if the Court concludes the Bank Secrecy Act and Section 1981

4  are capable of co-existence. Even Plaintiffs take the position that both can be given effect. Of

5  course Plaintiffs give both statutes "effect" by applying only Section 1981 and discarding the

6  requirements of the Bank Secrecy Act entirely.

7          BBVA's in-branch-application approach accomplishes what the Bank Secrecy Act

8  requires while accommodating Section 1981. *See U.S. v. 103 Elec. Gambling Devices*, 223 F.3d

9  1091, 1102 (9th Cir. 2000) ("courts should give effect to both of two statutes covering related or

10  overlapping subjects"). By implementing face-to-face account opening, BBVA satisfies the Bank

11  Secrecy Act's requirement that financial institutions implement adequate procedures with regard

12  to the identification and verification of accountholders, *see* 31 U.S.C. § 5318(i)(1) (3), 31 C.F.R.

13  § 1020.22, and it gives effect to Section 1981, preserving the right *to contract* that Section 1981

14  protects, Dkt. 42 at 8–9, by allowing non-U.S. persons to open bank accounts in the branch.[8]

15          Plaintiffs would have this Court eradicate BBVA's assessment of the risks and replace it

16  with their own (or their lawyers') assessment of the risks. This is contrary to what the Bank

17  Secrecy Act and its regulations require and it is a bad idea to arrogate to Plaintiffs control over

18  BBVA's efforts to follow applicable banking regulations to fight financial crimes. BBVA's in-

19  branch approach allows both the Bank Secrecy Act and Section 1981 to coexist, and it gives them

20  both effect. Therefore, it does not constitute actionable discrimination under Section 1981. For

21  this alternative reason, Plaintiffs' Section 1981 claim should be dismissed.

22          **D.  Plaintiffs' Section 1981 Claim Fails for Lack of But-For Causation**
              **and Because Plaintiffs Were Not Blocked from Opening an**
23                **Account**

24          As pointed out in the moving papers, Plaintiffs' citizenship was not the but-for cause of

25  their alleged injury and they were not blocked from opening a BBVA bank account. Plaintiffs

26

---

27      [8]  All but conceding the point, Plaintiffs continue to focus only on their preferred channel for
applying for an account, which Section 1981 does not protect, while ignoring altogether that they
28  were never blocked from contracting with BBVA, which is the right Section 1981 does protect.
Opp. at 16 ("Plaintiffs are only challenging BBVA's online policy as a violation of Section
1981.") (emphasis removed).

make two arguments in response, but both fail.[9]

Plaintiffs first argue they plausibly pled causation by characterizing their injury as being denied their preferred channel of online account opening. Opp. at 16. But as already explained, the contract at issue is a bank account—that's the contract right. Plaintiffs have no contractual or other right to apply for an account online. *Supra* Section II.A; *see also* SAC ¶¶ 26, 39, 41. Plaintiffs could have opened accounts if they had gone to the branch. *See* SAC ¶¶ 16 & 18 (alleging BBVA informed Plaintiffs "you may apply at a branch"). The but-for reason they don't have bank accounts is because they failed to go to a branch. On this record, citizenship is the not the but-for reason why Plaintiffs do not have BBVA bank accounts. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) ("plaintiff must initially plead and ultimately prove that, *but for [citizenship]*, it would not have suffered the loss of a legally protected right") (emphasis added). Plaintiffs thus have failed to establish the requisite causal link between their citizenship and alleged injury.

Plaintiffs next conclusorily assert that "BBVA's authority is inapplicable here," with no analysis whatsoever. Opp at 17. By their silence they tacitly concede that they needed to show, but did not show, that BBVA "'block[ed]' or 'thwart[ed]' the creation of a contractual relationship." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 476 (8th Cir. 2009) (citation omitted). Plaintiffs never bother to explain how their claim is any different from—or why this Court should not follow—the weight of authority finding no Section 1981 claim unless the plaintiff was "actually *prevented*" from entering a contractual relationship, which they were not. *Id.* at 471 (emphasis added); *see, e.g.*, *Bagley v. Ameritech Corp.*, 220 F.3d 518, 520–22 (7th Cir. 2000) (no Section 1981 violation where customer was not denied the opportunity to contract and merchant "was not responsible for terminating the transaction"); *Lopez v. Target Corp.*, 676 F.3d 1230,

---

[9] Plaintiffs argue in a footnote that "BBVA cites the incorrect standard at the pleading stage, citing to what Plaintiffs must demonstrate to establish a prima facie case at summary judgment." Opp. at 16 n.9 (referencing *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006)). But nothing in *Lindsey* indicates that the elements for a Section 1981 claim change from the pleading stage to the summary judgment stage. Indeed, many cases citing *Lindsey* have applied the same elements as BBVA in evaluating motions to dismiss. *See, e.g.*, *Bonner v. Rite Aid Corp.*, No. 19–674, 2020 WL 801897, at *4 (E.D. Cal. Feb. 18, 2020); *Childs v. Boyd Gaming Corp.*, No. 18–316, 2018 WL 4333945, at *4 (D. Nev. Sept. 11, 2018).

1233–35 (11th Cir. 2012) (affirming dismissal of plaintiff's Section 1981 claim because no contractual rights were "thwarted," even though cashier refused to serve plaintiff twice, as plaintiff was able to complete his purchase with another cashier); *Kinnon v. Arcoub, Gopman & Assocs., Inc*., 490 F.3d 886, 892 (11th Cir. 2007) ("Section 1981 does not provide a general cause of action for all racial harassment that occurs during the contracting process. Rather, in the retail context, the plaintiff must demonstrate the loss of an actual . . . contract interest. . . . Because [plaintiff's] exercise of her contractual rights was not in some way thwarted by [defendant], she cannot succeed on her § 1981 claim.") (quotation marks and citation omitted); *Childs*, 2018 WL 4333945 at *4 ("In the context of service and retail establishments, courts have declined to find § 1981 violations where the plaintiffs were 'denied neither admittance nor service, nor were they asked to leave.'") (citing cases).

BBVA did not block Plaintiffs from opening bank accounts; it invited them to do so but Plaintiffs declined. There is no Section 1981 claim under such circumstances.

### E.   Plaintiffs' Unruh Act Claim Fails as a Matter of Law Because Combatting Terrorist Financing Is a Compelling Social Policy and Attempting to Comply with the Bank Secrecy Act Is Not Arbitrary

Dismissal of Plaintiffs' Unruh Act claim is required because there is a "compelling social policy" underpinning the different treatment between a U.S.-person and a non-U.S. person. *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 38 (1985). What is more, "Unruh prohibits only arbitrary, invidious or unreasonable discrimination, *Sargoy v. Resolution Tr. Corp*., 8 Cal. App. 4th 1039, 1043 (1992), and BBVA's efforts to comply with its view of its own Bank Secrecy Act obligations is none of those things.

Plaintiffs do not dare dispute that national security, prevention of money laundering, and prevention of terrorist financing are all compelling social policies.[10] They argue instead that "nothing in the [Bank Secrecy Act] compels BBVA's policy" and a "ban on online account opening for non-U.S. citizens is not required to effectuate a robust CIP." Opp. at 18. Not only are these statements utterly without foundation, they miss the point. Under Unruh, the relevant

---

[10] Plaintiffs refer to the social policy underlying BBVA's Bank Secrecy Act compliance as "fraud" prevention. Opp. at 18. Despite this gross understatement, even fraud prevention, which underpins consumer protection laws in every jurisdiction, is a compelling social policy.

inquiry is what underpins the alleged differential treatment: is it a compelling social policy or something else? Are there *reasons* for the differential treatment or is it arbitrary? When the right questions are asked, the right answers are compelled.

There is no suggestion that BBVA's policy is motivated by anything but Bank Secrecy Act compliance. Plaintiffs *argue* they know better, that they could design a better CIP for BBVA—asserting that "there are other ways that [BBVA] could effectuate its obligations under the [Bank Secrecy Act]," Opp. at 18—but under the Unruh Act's standards, the potential for a "better" policy is legally immaterial. *This is a claim levying the serious accusation of intentional discrimination*. To state that claim, there must be something *other than* a compelling interest driving the alleged different treatment; it must be *arbitrary*, which means "seemingly at random or by chance or as a capricious and unreasonable act of will."[11] There is no suggestion that those standards are met. To be sure, Plaintiffs argue that BBVA is trying to comply *incorrectly* (according to them) but they can't dispute that BBVA's **one and only motive** for requiring non-U.S. persons who are not existing customers to open accounts in the branch is good faith compliance with its Bank Secrecy Act obligations. And *that* can never be an Unruh Act violation.

Plaintiffs cite the Court's order regarding Simple's account-opening process: "Defendant's argument might be persuasive if the Court agreed that the Bank Secrecy Act required a ban on opening [online] bank accounts for resident non-citizens with Social Security numbers, or allowed a financial institution to adopt such a ban notwithstanding federal antidiscrimination provisions." *Id.* (alteration added by Plaintiffs). But BBVA has a different business than Simple does. And BBVA undisputedly allows non-U.S. persons to open accounts; first-time non-U.S.-person customers just have to perform the application step in person, so the banker can look them in the eye and examine their identification documents in person. And non-U.S. persons who are existing customers *are* able to open additional accounts online, because their identities have already been verified. The across-the-board bar that led the Court to allow Plaintiffs' claims to proceed against Simple is materially absent here.

Finally, Plaintiffs argue that by having non-citizens open accounts at a branch, BBVA

---

[11] *See* Merriam-Webster Online Dictionary, https://bit.ly/3jbDRga (last visited July 15, 2020).

"perpetuates an irrational stereotype that non-U.S. citizens are more likely to finance terrorism or commit fraud" and "emphasizes an irrelevant difference" because non-citizens may be identified in the same way as U.S. citizens. *Id.* at 19. BBVA is not perpetuating stereotypes of any kind. The relevant risk BBVA has to manage for is *identity verification*, not actual terrorist financing.[12] And whether we like it or not, the regulations confirm that U.S. persons and non-U.S. persons are different for federal banking law purposes. Mot. at 6–7 (the regulations distinguish a "U.S. person" from a "non-U.S. person" and have different documentation standards for each) (citing 12 C.F.R. §§ 1010.100 & 1020.220(a)(2)(i)). So does the FFIEC's BSA/AML manual.[13]

Under the standards from *Twombly* and *Iqbal*, there is no plausible motivation for BBVA's account opening procedures for non-U.S persons *other than* BBVA's attempt to comply with the Bank Secrecy Act and its implementing regulations. That is undisputedly a compelling social policy and not arbitrary. Thus, Plaintiffs' assertion that BBVA's CIP program "could be better" does not save its Unruh Act claim, which is properly dismissed.

### F.   Plaintiffs' Claims Fail as a Matter of Law for Lack of Discriminatory Intent

As explained in BBVA's opening brief, Plaintiffs' claims fail because there is no plausible basis for the Court to conclude that BBVA developed its CIP for a discriminatory purpose. *Bastidas v. Good Samaritan Hosp. LP*, 774 F. App'x 361, 364 (9th Cir. 2019) (affirming dismissal of Section 1981 claim because "[n]one of [plaintiff's] factual allegations 'plausibly suggest an entitlement to relief'" because, among other reasons, they do not "support an inference that racial animus is the reason for the adverse employment action"). It was developed in order for BBVA to comply with its obligations under the Bank Secrecy Act. Plaintiffs make two arguments in response, neither of which has merit.

First, Plaintiffs claim "BBVA's motivation is wholly irrelevant." Opp. at 21; *see also id.* at 20 (suggesting there is no need to "prove" "discriminatory animus" for either claim). But if

---

[12] Plaintiffs' reliance on *Marina Point, Ltd. v. Wolfson,* 30 Cal. 3d. 721, 726–27 (1982) holds no weight for this reason. Moreover, prohibiting families with children from renting apartments because children are noisier than adults is quite different than requiring non-U.S. persons to open bank accounts in person because their identities cannot be adequately verified online.

[13] *Supra* note 7.

BBVA's "motivation" in developing its CIP were irrelevant, then neither Section 1981 nor the Unruh Act would require *intentional* discrimination.

Second, Plaintiffs claim that because BBVA's CIP "is discriminatory on its face," they have plausibly pled discriminatory intent. *Id.* at 20. But the CIP is not facially discriminatory; it is not a policy about U.S. persons versus non-U.S. persons, but about identification and identity verification; about whose identity can be adequately verified online and whose cannot. At best, Plaintiffs have alleged that BBVA's CIP has a disparate impact on non-U.S. persons. But disparate impact alone is insufficient for a Section 1981 or an Unruh Act claim. *See, e.g.*, *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 n.10 (9th Cir. 1985), *amended*, 784 F.2d 1407 (9th Cir. 1986) ("A plaintiff suing under section 1981 may prevail only by establishing intentional discrimination, *i.e.*, disparate treatment. Proof of disparate impact is insufficient."); *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 854 (2005) ("[A] plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act. A disparate impact analysis or test does not apply to Unruh Act claims.") (quotation marks and citation omitted).

In short, "[a]s between [the] obvious alternative explanation for [BBVA's CIP—the Bank Secrecy Act], and the purposeful, invidious discrimination [Plaintiffs] ask[] [the Court] to infer, discrimination is not a plausible conclusion." *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (quotation marks and citation omitted). Dismissal is thus warranted.

## IV.    CONCLUSION

For these reasons, and as set forth in the moving papers, Plaintiffs' direct claims against BBVA should be dismissed without leave to amend

Respectfully submitted,

Dated: July 20, 2020                    **KATTEN MUCHIN ROSENMAN LLP**

By:    /s/ Gregory S. Korman

Attorneys for Defendants BBVA USA f/k/a Compass Bank and Simple Finance Technology Corp.